| PATRICIA RIVET MURRAY, Judge.
This is a concursus proceeding brought pursuant to La. C.C.P. art. 4651 against three competing claimants for certain mineral royalties. The trial court granted a motion for partial summary judgment in favor of one of the claimants, BankPlus, against another claimant, James P. Qua-troy. From that decision, Mr. Quatroy appeals. Finding the trial court granted summary judgment prematurely, we reverse and remand.
FACTUAL AND PROCEDURAL BACKGROUND
On April 27, 2000, Bass Partnership and Bass Enterprises Production Co. (“BEP-CO”) commenced this concursus proceeding in Plaquemines Parish. This proceeding was brought against the following three claimants: (i) Mr. Quatroy, (ii) Bank-Plus, and (iii) Sharon Fortmayer. On July 13, 2000, Bass, BEPCO, and Exxon Mobil Corporation (“ExxonMobil”) filed an amended and restated petition. According to the amended petition, Bass Partnership and ExxonMobil are co-owners of a certain oil, gas, and mineral lease covering land partially located in Plaquemines Parish; the lease is recorded in the public records of that parish. BEPCO operates under the lease on behalf of the co-owners, Bass Partnership and | ¡.ExxonMobil; BEPCO pays royalties for Bass Partnership and, in the case of royalties on oil, also for Exxon-Mobil.
Mr. Quatroy is the current (or former) owner of certain mineral royalties attributable to the lands covered by the lease. On August 4, 1996, Mr. Quatroy, by Act of Donation Inter Vivos, purported to transfer and assign to Ms. Fortmayer mineral royalties attributable to the lands covered by the lease. On August 15,1996, that Act of Donation was recorded in the Plaque-mines Parish public records. On June 30, 1999, Mr. Quatroy purported to transfer and assign to BankPlus an interest in the mineral royalties attributable to the lands covered by the lease. As a result, as Plaintiffs assert in their petitions, the mineral royalties Mr. Quatroy purportedly assigned to BankPlus coincide in whole, or in part, with the mineral royalties he purportedly transferred by the earlier donation to Ms. Fortmayer. Plaintiffs further assert that Ms. Fortmayer is claiming ownership of the same mineral royalties being claimed by BankPlus. To resolve these competing and conflicting claims to the mineral royalties, Plaintiffs commenced the instant concursus proceeding. As requested ■ in the concursus petitions, the trial court ordered Plaintiffs to deposit into the registry of the court the royalties attributable to Mr. Quatroy for both the oil and gas production for Bass Partnership’s portion of the lease and the oil production for ExxonMobil’s portion of the lease from June 1,1999 forward.
On August 13, 2001, Mr. Quatroy, represented by counsel, answered the petitions, asserting that the donation to Ms. Fort-mayer is a nullity, denying the allegation *71 that he assigned his mineral royalties to BankPlus, admitting that both Ms. Fort-mayer and BankPlus have claimed rights to his mineral royalties, and claiming that the monies deposited in the registry of the court belong to him. On |sthat same date, Mr. Quatroy filed a cross claim against Ms. Fortmayer, alleging that his donation to her should be nullified because, among other reasons, he “was not competent and could not have donated any interest at the time the donation was purportedly signed.”
On October 10, 2001, BankPlus noticed Mr. Quatroy’s deposition, which was set for November 21, 2001. In preparation for that deposition, Ms. Fortmayer’s counsel filed a motion to compel answers to interrogatories and documentary requests against Mr. Quatroy. On November 15, 2001, the trial court signed a consent judgment on Ms. Fortmayer’s motion to compel, ordering Mr. Quatroy to provide, inter alia, all medical reports to Ms. Fortmayer’s counsel by November 19, 2001, which was three days before the scheduled deposition. That deposition, however, was continued. On November 17, 2001, Mr. Qua-troy’s deposition was re-noticed and reset for January 8, 2002. The record contains a copy of Mr. Quatroy’s deposition taken on that date.
The record reflects a lengthy period of inactivity in this case from December 17, 2001, when Mr. Quatroy’s deposition was re-noticed, until November 3, 2003, when his current counsel enrolled as counsel of record. On November 4, 2003, the next day, BankPlus filed a motion for partial summary judgment against Mr. Quatroy. In its motion, BankPlus contended that it was entitled to the monies deposited in the registry of the court as a result of three collateral assignments Mr. Quatroy made in its favor. BankPlus emphasizes that although Mr. Quatroy denied in his answer that he signed an assignment in its favor, he admitted in his ^deposition that he executed the three collateral assignments with the intent to collateralize the loans of his friend, Michael A. Donnelly.[1]
The trial court set the hearing on Bank-Plus’ motion for December 2, 2003. On November 17, 2003, Mr. Quatroy’s current counsel filed a motion to continue the hearing, asserting that he had only recently enrolled as counsel of record and that he required additional time due to the extensive preparation needed to oppose the summary judgment motion. On November 19, 2003, the trial court denied Mr. Quatroy’s motion to continue. On November 25, 2003, Mr. Quatroy filed an opposition to the summary judgment motion. In support of his opposition, Mr. Quatroy submitted both an affidavit of his lifelong caretaker and friend, Debbie Preveau, and a report irom a psychiatrist, Dr. Donna Mancuso, the head of the Department of Psychiatry at Louisiana State University Medical School.
At the December 2, 2003 hearing, Mr. Quatroy’s counsel again requested a continuance. The trial court denied Mr. Qua-troy’s counsel’s request to continue and granted BankPlus’ motion for partial summary judgment. The trial court found that BankPlus’ motion was supported by Mr. Quatroy’s deposition and by the Bank’s affidavits establishing the debt and the assignments.[2] The trial court further *72 found that the three collateral assignments in BankPlus’ favor are binding on Mr. Quatroy and secure the debt represented by Mr. Donnelly’s promissory |Knote to BankPlus dated June 23, 1999 in the original principal amount of $224,739.20.
As to Mr. Quatroy’s opposition, the trial court found no factual support for the defenses that he has asserted in his amended answer, which included lack of capacity.[3] Focusing on the lack of capacity defense, the trial court found that Mr. Quatroy failed to satisfy his burden under La. C.C.P. art. 966 C(2) because “[t]he doctor’s report submitted by Mr. Quatroy [from Dr. Mancuso] does not cover the time periods involved in the aforementioned assignments and suggests that Mr. Quatroy was competent at other times.” Continuing, the court found that “by its order -of November 15, 2001 Mr. Quatroy was ordered long ago to give all medical reports ■ to counsel, which was not done until just before this hearing in conjunction with Mr. Quatory’s opposition.” The court clarified that the judgment only decided the rights of James Peter Quatroy and BankPlus and did not decide the rights as to any of the other parties to the action. Lastly, the court declared that “[tjhis judgment is designated a Final Partial Judgment pursuant to La.Code of Civ. Pro. art. 1915.”[4] This appeal followed.
DISCUSSION
Appellate courts review grants of summary judgment de novo using the same standard applied by the trial court in deciding the motion for summary | ¿judgment. Schmidt v. Chevez, 2000-2456, p. 4 (La.App. 4 Cir.1/10/01), 778 So.2d 668, 670. Under that standard, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Schmidt, 2000-2456 at p. 3, 778 So.2d at 670.
*73 A defendant may file a summary judgment motion at any time. La. C.C.P. art. 966(A). However, a trial court shall consider a summary judgment motion only “[ajfter adequate discovery or after a case is set for trial.” La. C.C.P. art. 966(C)(1). The requirement that a summary judgment should be considered only after “adequate discovery” has been construed to mean that there is no absolute right to delay action on a summary judgment motion until discovery is complete; rather, the requirement is only that parties have a fair opportunity to carry out discovery and to present their claim. Simoneaux v. E.I. du Pont de Nemours and Co., 483 So.2d 908, 912-13 (La.1986); Butzman v. Louisiana Power and Light Co., 96-2073, p. 4 (La.App. 4 Cir. 4/30/97), 694 So.2d 514, 517.
The mere contention of an opponent that he lacks sufficient information to defend the motion and that he needs additional time to conduct discovery is insufficient to defeat the motion. Crocker v. Levy, 615 So.2d 918 (La.App. 1 Cir.1993); Barron v. Webb, 29,707 (La.App. 2 Cir. 8/20/97), 698 So.2d 727 (finding the filing of a “eonclusory affidavit” to be insufficient). However, when the plaintiff alleges sufficient reasons why additional evidence to oppose the summary judgment motion could not be produced, it is an abuse of discretion for the trial court to deny the plaintiffs request for a continuance. Migliore v. Kinsley, 531 So.2d 1091, 1094 (La.App. 4 Cir.1988); Leake & Andersson, L.L.P. v. SIA Ins. Co., 2003-1600 (La.App. 4 Cir. 3/3/04), 868 So.2d 967 (finding summary judgment premature when the information the opposing party seeks to discover pertains directly to the unresolved factual issue in the case).
On appeal, Mr. Quatroy contends, as he did at the trial court level, that summary judgment was prematurely granted because adequate discovery was not completed. He further contends that the trial court expressly recognized that the Code of Civil Procedure does not allow “jamming” an opponent who legitimately needs additional time to prepare his defense. In this regard, he notes that his counsel was diligent at all times. Indeed, he points out that his counsel submitted an opposition to the summary judgment motion, which was supported by an affidavit and a medical report, albeit one prepared to address the facts of an unrelated case. Mr. Quatroy still further contends that because the money in dispute is deposited in the registry of the court and earning interest, the other two claimants, Bank-Plus and Ms. Fortmayer, would not have suffered any irreparable harm if the trial court had granted his request for a continuance.
Finally, Mr. Quatroy emphasizes that the trial court judge expressly acknowledged at the hearing that fairness dictated granting a continuance stating:
Let me tell you my dilemma. And that is that I get a motion to continue a Summary Judgment and I get an opposition and I say, “Well, based on the opposition, this matter ought to be heard on the Summary Judgment.”[5] I am sitting here today thinking that maybe I got to give him a little bit more time to oppose the Motion for Summary Judgment based on the circumstances. Just to be fair.
*74 IsGiven these facts, Mr. Quatroy contends that the trial court abused its discretion in denying his motion and request for a continuance and that the trial court thus granted BankPlus’ motion for summary judgment prematurely.
BankPlus’ counter argument is that the trial court’s denial of the requested continuance was legally, factually, and procedurally correct. Legally, BankPlus emphasizes the great discretion given a trial court in denying (or granting) a continuance and the corollary principle that the trial court’s ruling on this issue should not be overturned on appeal absent a “clear abuse of discretion.” St. Tammany Parish Hosp. v. Burris, 2000-2639 (La.App. 1 Cir. 12/28/01), 804 So.2d 960. Bank Plus further emphasizes the jurisprudential principle that the discharge (or withdrawal) of one’s counsel is not a ground for a continuance and that the party seeking the continuance based on that ground has the burden of proof. Rainone v. Exxon Corp., 93-2008 (La.App. 1 Cir. 1/13/95), 654 So.2d 707; see also Mouton v. Sears Roebuck and Co., 99-669, p. 5 (La.App. 3 Cir. 11/3/99), 748 So.2d 61, 65 (noting that “[ejven if the present attorney was not hired until shortly before the hearing date,” this is not a sufficient reason to continue the hearing). BankPlus still further emphasizes that the decision of whether to deny (or grant) a continuance is required to be based on the particular factual circumstances of the case. St. Tammany, 2000-2639 at p. 5, 804 So.2d at 963.
Factually, BankPlus contends that the circumstances of this case support the trial court’s denial of the continuance. Bank-Plus stresses that throughout this litigation Mr. Quatroy has been represented by competent counsel and that he has participated in a significant amount of discovery, including being personally deposed and responding to written discovery requests. According to BankPlus, the | ^following list of six facts support the trial court’s denial of Mr. Quatroy’s motion and request for a continuance:
1. The matter had been pending more than three years.
2. Mr. Quatroy had been represented throughout by counsel of his choosing. His newest counsel in this matter, Mitchell Hoffman, had been representing Mr. Quatroy for more than six (6) months in another matter and had been asked several times during that period by undersigned counsel to substitute himself as counsel of record in this matter.
3. Scheduled as it was, Mr. Quatroy’s counsel had more than one month to prepare for the hearing on the Motion for Partial Summary Judgment.
4. One of the other defendants, Ms. Fortmayer, was represented by counsel at the hearing on BankPlus’ motion. Ms. Fortmayer opposed the continuance. The trial court, as part of his balancing of fairness to the parties, took her interest into account also.
5. The Court had previously ordered that all medical reports be furnished to opposing counsel by November 19, 2001. Dr. Mancuso’s report, however, which Mr. Quatroy argues supports his appeal, was not furnished to BankPlus’ counsel, or any of the other attorneys involved, until the day before the complained of hearing.
6. Mr. Quatroy’s attorneys argued at the hearing on BankPlus’ motion that they had been unable to get an additional report from Dr. Mancuso. No proof, however, was provided by Mr. Quatroy at the December 2, *75 2003 hearing that Dr. Mancuso could not have provided such a report.
Proeedurally, BankPlus contends that Mr. Quatroy failed to comply with the procedural requirements for seeking a continuance under La. C.C.P. arts. 1603 and 967(C). Despite the requirement of Article 1603 that a motion to continue “shall set forth the grounds upon which it is based,” Mr. Quatroy’s motion did not. La. C.C.P. art. 1603. Despite the requirement of Article 967(C) that a party opposing (and seeking to continue) a motion for summary judgment provide proof by “affidavits of a party opposing the motion,” Mr. Quatroy’s opposition was not accompanied by such an affidavit. La. C.C.P. art. 967(C). As to the latter |inrequirement, BankPlus stresses Mr. Quatroy’s counsel’s failure to furnish an affidavit from his client, Mr. Quatroy, and his failure to furnish an affidavit documenting Dr. Mancu-so’s inability to furnish a supplemental report within the pertinent thirty-day time frame. Given the absence of such affidavits, BankPlus contends that it was not an abuse of discretion for the trial court to deny Mr. Quatroy’s request for a continuance. See Tollett v. Members of Orleans Parish School Bd., 2000-0295 (La.App. 4 Cir. 3/7/01), 782 So.2d 681.
Given this case had been pending for over three years, we find it was not an abuse of discretion for the trial court to deny the motion to continue.[6] However, we find, for the reasons outlined below, that it was an abuse of discretion for the trial court to deny Mr. Quatroy’s request at the hearing to continue ruling on the motion for summary judgment. We thus find the trial court granted summary judgment prematurely.
In addressing a party’s contention that summary judgment was prematurely granted because adequate discovery had not been completed, four relevant factors to consider are: (i) whether the party was ready to go to trial, (ii) whether the party indicated what additional discovery was needed, (iii) whether the party took any steps to conduct additional discovery during the period between the filing of the motion and the hearing on it, and (iv) whether the discovery issue was raised in the trial court before the entry of the summary judgment. Greenhouse v. C.F. Kenner Associates Ltd. Partnership, 98-0496, p. 3 (La.App. 4 Cir. 11/10/98), 723 So.2d 1004, 1006. Applying these factors to the facts of the instant case establishes that Inthe trial court abused its discretion in denying Mr. Quatroy’s request to continue ruling on the motion for summary judgment.
As to the first factor, this case has not yet been set for trial; thus, this factor is inapposite.[7]
As to the second factor, Mr. Quatroy’s counsel indicated at the hearing, albeit not in an affidavit, that he requested a continuance because thirty days was insufficient to obtain from Dr. Mancuso a supplemental report addressing Mr. Quatroy’s mental *76 competence when he executed these assignments to BankPlus.[8] Mr. Quatroy’s counsel clarifies that Dr. Mancuso’s report is a psychiatric evaluation that was prepared in connection with an unrelated case, captioned “Michael A. Donnelly v. James P. Quatroy.” Mr. Quatroy’s counsel explained that it “took months to secure that report,” which is seventy-seven pages in length and which addresses the particular financial transactions (some loans) at issue in that unrelated case. Mr. Quatroy’s counsel further explained that the report coincidentally covered the period of time during which the assignments to BankPlus were executed and that the only reason he introduced that report in opposition to the summary judgment in this case was because he did not have sufficient time to secure a supplemental report from Dr. Mancuso addressing the assignments at issue in this case.
As to the third factor, during the one-month period between the filing of the motion and the hearing, Mr. Quatroy’s counsel obtained an affidavit from Ms. lii>Preveau, who is Mr. Quatroy’s lifelong friend, caretaker, and a retired policewoman.[9] Also, as discussed above, Mr. Qua-troy’s counsel indicated that but for the short time frame involved (thirty days) he would have secured from Dr. Mancuso a supplemental report tailored to this case. Mr. Quatroy’s counsel’s actions establish that this is not a case in which the opponent took no steps and simply sought a continuance based on an alleged need to conduct additional discovery. Cf. Lacure v. Brookshire’s Stores, 38,627 (La.App. 2 Cir. 6/23/04), 877 So.2d 264 (rejecting argument summary judgment prematurely granted given plaintiffs failure in opposition memorandum to offer any support for assertion that she could gather credible evidence if allowed additional time to conduct discovery); Green v. State Farm General Ins. Co., 35,775, p. 11 (La.App. 2 Cir. 4/23/02), 835 So.2d 2, 8 (finding summary judgment not premature and noting that the plaintiff “simply sought to delay the long pending matter by repeating again his intention to hire a scientific expert”).
As to the fourth and final factor, the record indicates that the discovery issue was raised by Mr. Quatroy’s counsel both at the hearing and in a motion to continue.
For these reasons, we find that once Mr. Quatroy’s counsel informed the trial court at the hearing that additional time was required to secure a supplemental report from Dr. Mancuso, it was an abuse of discretion for the trial court to refuse to grant at least a brief continuance. Our finding that the trial court abused its discretion is buttressed by the fact the trial court expressly relied on the failure of lifDr. Mancuso’s report to address the assignments at issue. The trial court stated in its written reasons for judgment that “[t]he doctor’s report submitted by Mr. Quatroy does not cover the time periods involved in the aforementioned assignments and suggests that Mr. Quatroy was competent at other times.”
Our finding is further buttressed by the fact that, as Mr. Quatroy stresses, the trial court acknowledged at the hearing that it *77 would perhaps be unfair to deny the request for a continuance. What apparently persuaded the trial court nonetheless to deny the continuance was opposing counsel’s response to the following question the trial court posed: “Do you also think that the Fourth Circuit might say that I jammed him up too much and that I didn’t give him a fair opportunity to oppose the Motion based on the fact that he enrolled as counsel so recently and moved to continue the motion?” Opposing counsel’s response was that it was not unfair because, among other reasons, Mr. Quatroy’s prior counsel violated the November 15, 2001 consent judgment by failing to produce of all Mr. Quatroy’s medical reports by November 19, 2001. BankPlus’ argument, which the trial court accepted, was that Mr. Quatroy violated the consent judgment by failing to provide opposing counsel with a copy of Dr. Mancuso’s report until shortly before the hearing; this finding is reflected in the trial court’s statement in its reasons for judgment that “by its order of November 15, 2001 Mr. Quatroy was ordered long ago to give all medical reports to counsel, which was not done until just before this hearing in conjunction with Mr. Quatory’s opposition.”
The trial court’s rebanee on Mr. Qua-troy’s current (or prior) counsel’s purported violation of the consent judgment as a basis for denying his request for a | ucontinuance was misplaced for two reasons. First, Dr. Mancuso’s report is based on her evaluation of Mr. Quatroy on July 2, 2003, which was two years after Mr. Quatroy’s deposition was taken in this case. Second, the consent judgment expressly states that sanction for failure to produce the medical reports was that opposing counsel could retake Mr. Quatroy’s deposition at a latter date; the pertinent provision in the consent judgment reads:
IT FURTHER ORDERED that if all documents [medical reports] and information are not given to counsel for Sharon Ann Fortmayer by Monday, November 19, 2001, then counsel for Sharon Ann Fortmayer shall be allowed to depose James P. Quatroy subsequent to the presently scheduled deposition of James Peter Quatroy, set for November 21, 2001.
As noted, Mr. Quatroy’s deposition was not taken on November 21, 2001; rather, it was continued and rescheduled for January 8, 2002. At that January 8th deposition, Ms. Fortmayer’s counsel informed Mr. Quatroy on the record that because counsel had only recently received a medical release to obtain Mr. Quatroy’s records, counsel was reserving the right to resume the deposition if his review of those records required he do so. Bank-Plus’ counsel likewise made the same reservation. The record thus reflects that the purpose of the provision in the consent judgment — that opposing counsel be allowed to question Mr. Quatroy after reviewing his medical records — was satisfied.
In conclusion, we find that the trial court prematurely granted BankPlus’ partial motion for summary judgment. Given that finding, we need not address the other assignment of errors Mr. Quatroy asserts on appeal.

_|^DECREE

For the foregoing reasons, the judgment of the trial court granting BankPlus’ partial motion for summary judgment is reversed. This case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.

. Although the petitions only refer to a June 30, 1999 assignment, BankPlus attached to its motion copies of three assignments: a June 30, 1999 assignment, a June 15, 1999 assignment, and a collateral assignment addendum dated May 3, 2000, which was recorded in the Plaquemines Parish public records.

. Attached to BankPlus’ motion was an affidavit of its former bank officer, who identified the above three assignments Mr. Quatroy *72 signed. Also attached was the affidavit of BankPlus' South Region president. The president attested that: (i) the bank loaned Michael Donnelly $224,739.20 by promissory note dated June 23, 1999; (ii) the loan was secured by the collateral assignments from Mr. Quatroy; (iii) Mr. Quatroy, at the bank's request, sent a letter dated January 20, 2000 to Bass Enterprises directing it to make all future royalty payments to BankPlus; (iv) BankPlus received some royalty payments, but Bass Enterprise stopped such payments due to a question regarding the relative priority of the assignments to a prior assignment to Ms. Fortmayer; (v) Mr. Donnelly has defaulted on the promissory note and filed for bankruptcy; and (vi) Mr. Donnelly's bankruptcy reorganization plan stipulated that the collateral assignments are part of the collateral securing his debt to BankPlus.

. At the hearing, the trial court granted Mr. Quatroy's motion for leave to file an amended answer. In that amended answer, he asserted five affirmative defenses' to BankPlus' claim; to-wit: (i) duress, (ii) error and mistake, (iii) failure of consideration, (iv) fraud in the inducement, and (v) lack of capacity. As to the latter defense, he alleged:
On the dates these assignments were signed, Mr. Quatroy was suffering from Bipolar Disorder, and Severe Manic Depression. He was not under the care of a psychiatrist nor was he taking medication to control his psychiatric illnesses. Under no circumstances, on June 29, 1999 or May 3, 2000, did Mr. Quatroy have the mental capacity to comprehend the consequences of assigning his interest in Bass Enterprises Production Company to BankPlus.

. The trial court's express designation of the judgment as a final appealable judgment under La. C.C.P. art. 1915 satisfies the requirements we recently articulated for appellate jurisdiction in Roundtree v. New Orleans Aviation Bd., 2004-0702 (La.App. 4 Cir. 2/04/05), 896 So.2d 1078.

. BankPlus’ opposition, which was in the form of a letter, set forth three facts it asserted supported denying the motion to continue; to-wit: (1) the matter had been pending over three years, (2) Mr. Quatroy has been represented by counsel throughout, and (3) his newly enrolled counsel had thirty days to prepare.

. We note that there was a significant period (over a year) of inactivity in this case that cannot be attributed to Mr. Quatroy. Indeed, at the hearing on the motion for summary judgment, opposing counsel acknowledged that the reasons for the delay in bringing the summary judgment motion included settlement negotiations, discovery depositions, and the death of Mr. Quatroy’s mother.

. We note that at the hearing on BankPlus’ motion for summary judgment, the trial court granted Mr. Quatroy’s motion for leave to file an amended answer, asserting five affirmative defenses. In his opposition memorandum, Mr. Quatroy’s counsel contended that this case was not ripe for summary judgment because no discovery had been conducted on the affirmative defenses he asserted in his amended answer.

. Mr. Quatroy's counsel further indicated at the hearing that the reason no counter affidavit from Mr. Quatroy was produced was because his client’s mental problems render him incompetent to provide such an affidavit. His counsel still further indicated that he needed to depose BankPlus’ employees.

. Ms. Preveau attested that Mr. Quatroy was notoriously incompetent and that it would have been obvious to anyone who dealt with him. Although the trial court questioned Ms. Preveau’s competence to render an opinion on Mr. Quatroy’s mental capacity, such determinations are not appropriate on summary judgment.