| | | |
|---|---|---|
| NYRESS MANNING ON BEHALF OF MINOR CHILD, C.W. FOR THE WRONGFUL DEATH OF DEREIAL MANNING AND FOR SURVIVAL DAMAGES | * * * * | NO. 2023-CA-0588 |
| | | COURT OF APPEAL |
| | | FOURTH CIRCUIT |
| VERSUS | * | STATE OF LOUISIANA |
| | * * * * * * * | |
| RH WINDRUN LLC, THE LYND COMPANY D/B/A LYND LIVING, XYZ SECURITY COMPANY, JOHN DOE I, JOHN DOE II, ABC INSURANCE COMPANY, DEF INSURANCE COMPANY, GHI INSURANCE COMPANY | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-05388, DIVISION "I-14"
Honorable Lori Jupiter, Judge
* * * * * *
**Judge Karen K. Herman**
* * * * * *
(Court composed of Judge Roland L. Belsome, Judge Karen K. Herman, Judge Nakisha Ervin-Knott)

Daryl A. Gray
Eric A. Wright
Corrie R. Gallien, III
WRIGHT & GRAY
201 St. Charles Ave, Suite 3206
New Orleans, LA 70170

      COUNSEL FOR PLAINTIFF/APPELLANT, NYRESS MANNING

Nicholas Bergeron
Emily E. Eagan
GIEGER, LABORDE, & LAPEROUSE, L.L.C.
Hancock Whitney Building
701 Poydras Street, Suite 4800
New Orleans, LA 70139

      COUNSEL FOR DEFENDANT/APPELLEE, RH WINDRUN LLC

      **REVERSED AND REMANDED**
      **MAY 1, 2024**

KKH
RLB
NEK

Plaintiff-Appellant, Nyress Manning ("Manning"), the mother of decedent Dereial Manning, on behalf of C.W., decedent's son ("Plaintiff"), appeals the trial court's judgment, which granted a motion for summary judgment in favor of Defendant-Appellee, RH Windrun, LLC. For the following reasons, the trial court judgment is reversed and the matter is remanded for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

This negligence suit stems from a homicide of Dereial Manning ("the decedent") that occurred on or about July 16, 2020 at the Carmel Spring apartments in New Orleans, LA. According to the pleadings, the decedent was visiting her friend, Kayla Winsley ("Winsley"), at her apartment with her two year old son, Corey Williams, Jr. when she responded to a knock at the door of the apartment. When she opened the door, two unknown individuals, at least one of whom was armed, shot her several times and killed the decedent.

As a result, Plaintiff filed a wrongful death and survival action against Defendant, RH Windrun, LLC, the owner of Carmel Spring Apartments ("Defendant"); Lynd Company, the property manager for the apartments; the two

2

unidentified assailants; and the phantom insurance companies. Plaintiff alleged that the defendants should have foreseen that the shooting of the decedent would have occurred because they knew or should have known of the existence and frequency of other similar crimes of violence on the property in the months and years prior. Plaintiff alleged several theories of liability, including but not limited to, inadequate security, inadequate lighting, negligent training, and negligent supervision.

On March 22, 2023, Defendant filed a motion for summary judgment, arguing that because a lessor has no duty of care to its lessees' guests to protect against third party criminal acts, it cannot be held liable for the injuries alleged by Plaintiff. In support of its motion for summary judgment, Defendant submitted the petition for damages; the affidavit of Moshe Mark Silber, an "owner of RH New Orleans Holdings MM LLC, which is the holding company of RH New Orleans JV LLC, which fully owns RH Windrun, LLC—the owner of Carmel Spring Apartments," who identified and authenticated the lease agreement between Defendant and Winsley; and the lease agreement.

Plaintiff filed an opposition on May 11, 2023, arguing Defendant had a duty to provide adequate security at the apartment to its lessees and guests and had breached its duty. Plaintiff also cites a portion of the lease, which she claimed shows Defendant assumed a duty to provide security. She further argued that additional discovery is necessary to determine the extent of negligence in failing to provide adequate security despite the known violence in the apartment complex. Plaintiff attached the following exhibits in support of her opposition: excerpts of the deposition of Herman Ratchford, dated April 17, 2018, from a separate

lawsuit;[1] a video of the Carmel Springs apartment, dated August 10, 2021; the affidavit of Manning, which referenced and included several news articles and Google reviews of the apartment complex.[2]

The portion of the lease, referenced by Plaintiff to support her claim that Defendant assumed a duty to provide security to its lessees and its guests, provides:

19. LIMITATIONS ON CONDUCT

. . .

We may exclude from the apartment community, to the extent permitted by Louisiana statutes, guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives.

We may also exclude from any outside area or common area to the extent permitted by Louisiana statutes, a person who refuses to show identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving controlled substance, violence to another person or destruction of property. You also agree to notify us [i]f you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our rights to evict you.

---

[1] Ratchford testified that in 2015, he was one of the owners of the two corporations that operates Windrun Apartments in New Orleans. He admitted that there were at least twelve incidents of violent crime from June 8, 2013 to December 15, 2015. The record reveals that Ratchford is not the current owner of the apartment complex. Defendant objected to this evidence as well as the other evidence Plaintiff submitted in opposition in its reply memorandum. In response to Defendant's objection, the trial court did not consider the deposition of Ratchford in ruling on her motion for summary judgment. *See Robertson v. Doug Ashy Bldg. Materials, Inc*., 2014-0141, p. 35, n. 27 (La. App. 1 Cir. 12/23/14), 168 So.3d 556, 582 (noting that "depositions in other proceedings are 'collateral depositions' and should not be used or considered in summary judgments" and refusing to consider the collateral depositions offered by the plaintiffs in opposition to the motion for summary judgment on *de novo* review); *see also Edwards v. Larose Scrap & Salvage, Inc.,* 2010–0596 (La. App. 3rd Cir. 12/8/10), 52 So.3d 1009, 1012 (reversing summary judgment when the trial court based its decision on a collateral deposition).

[2] The admissibility of the video and documents referenced in Manning's affidavit will be addressed later herein.  *See* n. 7.

20. PROHIBITED CONDUCT. You, your occupants or guests, or the guests or any occupants, may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (Including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others.

In her affidavit, Manning attested that her daughter "spent most nights" at the apartment "such that she resided" there. She stated that her daughter had moved in the apartment with her long-term friend and tenant, Winsley, approximately a month prior to the incident and began sleeping at the apartment. Manning attested that on July 16, 2020, at approximately 3:20 a.m., her daughter "answered a knock at the exterior door" of the apartment and when "she answered… unknown individuals opened fire and gunned her down." She stated that her daughter was "shot at least 9 times" and subsequently died. Manning also stated that prior to this incident the apartment complex was known as a high crime area as there had been previous incidents of burglary, theft, and murder. She further attested:

I am familiar with the general community reputation of Carmel Springs Apartments, formerly known as Wind Run Apartments. It has been communicated to me many times that there are/were inadequate cameras or security. The apartment complex never or rarely had a security guard on duty. Although it had a security booth at the entrance of the parking lot, this booth appeared discarded, inoperative and unused.

She stated that after her daughter's death, she "personally spoke with Ms. Nicole Stewart, who informed me that her daughter Breon Stewart died" at the

5

apartment complex years prior. Manning also attested that when she arrived on the scene early morning on July 16, 2020, she personally observed several security deficiencies, including poor lighting, no operable security fence; and an absence of security guards.[3] She further stated that she had "not been made aware of any cameras being in good operations on July 16, 2020."

The matter came for hearing before the trial court on May 26, 2023 and the trial court granted the motion for summary judgment in favor of Defendant, dismissing Plaintiff's claims against it with prejudice. Judgment to that effect was signed on June 12, 2023.

Upon receipt of Plaintiff's request for written reasons, on October 2, 2023, the trial court issued its written reasons for judgment, which provide in relevant part:

> Windrun claims that, pursuant to Louisiana law, Windrun, as a landlord, owes no duty of care to its lessee's guests to protect against third-party criminal acts. Windrun further attests that, as the first pillar of Plaintiff's negligence-based claims cannot be supported, the negligence claims themselves fail against it. The Court agrees.
>
> Louisiana law is clear that a landlord owes no duty of care to its lessee's guests to protect against third-party criminal acts. *See Posecai v. Wal-Mart Stores, Inc*., [19]99-1222 (La. 11/30/99), 752 So.2d 762, 766; *and Landry v. St. Charles Inn, Inc., 446 So.2d 1246, 1250 (La. Ct. App. 1984)* Manning has provided no legal claims sufficient to overcome the law or the facts that Windrun's lease contract details no duty of security, and it assumed no duty by its actions. The crux of the matter is that lessors owe no duty of security to the guests of lessees.

---

[3] Manning also identified and attached Google reviews and news articles about the crime at the apartment complex. The news articles report a December 27, 2015 shooting and death of Breon Stewart and her unborn child; vehicle burglaries occurring on April 28, 2018; an August 22, 2021 shooting death of an unidentified man in a parked car at the apartment complex; a January 28, 2022 shooting death of an unidentified male inside of an apartment unit at the apartment complex; as well as an article pertaining to the shooting of the decedent. The Google reviews suggest that there were break-ins and shootings on the property and contained complaints of lack of security.

Without proof of a legal duty, Manning's claims against Windrun based in negligence lack the support necessary to defeat the Motion for Summary Judgment and there are no genuine issues of material fact precluding the Court from granting summary judgment.

Plaintiff's timely appeal follows.

**APPLICABLE LAW AND DISCUSSION**

This Court in *Carlin v. Clear Blue Ins. Co.*, 2022-0566, pp. 7-9 (La. App. 4 Cir. 2/8/23), 357 So.3d 533, 537-38, set forth the standard of review on motions for summary judgment as follows:

> A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Garrison v. Old Man River Esplanade, L.L.C.,* 2013-0869, p. 2 (La. App. 4 Cir. 12/18/13), 133 So.3d 699, 700; *Duncan v. U.S.A.A. Ins. Co.*, 2006-0363, p. 3 (La. 11/29/06), 950 So.2d 544, 546.

> "A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Schultz v. Guoth*, 2010-0343, pp. 5-6 (La. 1/19/11), 57 So.3d 1002, 1005-1006 (quoting *Samaha v. Rau*, 2007-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882–83); *Smith v. Treadaway*, 2013-0131, p. 4 (La. App. 4 Cir. 11/27/13), 129 So.3d 825, 828.

> La. C.C.P. art. 966(A)(3) provides that a motion for summary judgment will be granted "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." "The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La. C.C.P. art. 966(A)(4).

> The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). The procedure is favored and shall be construed to accomplish these ends. *Id*. La. C.C.P. art. 966(D)(1) sets forth the burden of proof in summary judgment proceedings, as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is

before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

"When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue for trial." La. C.C.P. art. 967(B). "If he does not so respond, summary judgment, if appropriate, shall be rendered against him." *Id.*

"A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could only reach one conclusion, there is no need for trial on that issue, and summary judgment is appropriate." *Crosby v. Sahuque Realty Co., Inc.*, 2021-0167 [p. 6 (La. App. 4 Cir. 10/13/21), 366 So.3d 123, 128] (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 1993-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751). "A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Crosby*, 2021-0167, pp. 6-7, [366 So.3d at 128-29] (citing *Chapital v. Harry Kelleher & Co., Inc.,* 2013-1606, p. 5 (La. App. 4 Cir. 6/4/14), 144 So.3d 75, 81).

A trial court may not weigh conflicting evidence or make credibility determinations in deciding a motion for summary judgment. *Danna v. Ritz-Carlton Hotel Co., LLC,* 2015-0651, p. 6 (La. App. 4 Cir. 5/11/16), 213 So.3d 26, 32 (citing *M.R. Pittman Grp., L.L.C. v. Plaquemines Par. Gov't*, 2015-0860, p. 11 (La. App. 4 Cir. 12/2/15), 182 So.3d 312, 320 and *Jeffers v. Thorpe*, 1995-1731, p. 4 (La. App. 4 Cir. 1/19/96), 673 So.2d 202, 205). Additionally, "[a]ny doubt regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits." *Danna,* 2015-0651, p. 7, 213 So.3d at 32 (quoting *Smith*, 1993-2512, p. 27, 639 So.2d at 751).

"Any consideration as to whether the plaintiff will succeed at a trial on the merits is irrelevant and an insufficient basis to render a summary judgment against that party." *Jones v. Gov't Emps. Ins. Co.,* 2016-1168, p. 7 (La. App. 4 Cir. 6/14/17), 220 So.3d 915, 921 (quoting *Barbarin v. Dudley*, 2000-0249, p. 6 (La. App. 4 Cir. 12/20/00), 775 So.2d 657, 660).

8

Louisiana employs a duty-risk analysis to resolve claims of negligence.[4] *See Harris v. Boh Bros. Constr. Co., LLC*, 2020-0248, p. 20 (La. App. 4 Cir. 5/26/21), 322 So.3d 397, 412 (quoting *Chanthasalo v. Deshotel*, 2017-0521, p. 6 (La. App. 4 Cir. 12/27/17), 234 So.3d 1103, 1107). To prevail under a negligence claim, the plaintiff must prove: (1) the defendant had duty to conform his conduct to specific standard; (2) the defendant failed to conform his conduct to appropriate standard; (3) defendant's substandard conduct was cause-in-fact of injuries; (4) the defendant's conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Id*. (quoting *Chanthasalo*, 2017-0521, p. 6, 234 So.3d at 1107-08); *see also Bufkin v. Felipe's Louisiana, LLC*, 2014-0288, p. 5 (La. 10/15/14), 171 So.3d 851, 855.

"A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." *FIE, LLC v. New Jax Condo Ass'n, Inc.*, 2016-0843, p. 23 (La. App. 4 Cir. 2/21/18), 241 So.3d 372, 391–92 (quoting *Ponceti v. First Lake Properties, Inc.*, 2011-2711, p. 2 (La. 7/2/12), 93 So.3d 1251, 1252). "The existence of the duty is a question of law." *Id*. at p. 23, 241 So.3d at 392 (quoting *Ogea v. Merritt*, 2013-1085, p. 24 (La. 12/10/13), 130 So.3d 888, 905). However, "[w]hether a legal duty exists, and the extent of that duty, depends on the facts and circumstances of the case, and the relationship of the parties." *Id*. (quoting *Joseph*

---

[4] La. C.C. art. 2315(A) provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. C.C. art. 2317 provides, in part: [w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." La. C.C. art. 2317.1 further provides, in part: "[t]he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care."

*v. Dickerson*, 1999-1046, 1999-1188, p. 7 (La. 1/19/00), 754 So.2d 912, 916.

"[T]he inquiry is whether the plaintiff has any law—statutory, jurisprudential, or arising from general principles of fault—to support his claim." *Id*. at p. 24, 241 So.3d at 392 (quoting *Ogea*, 13–1085, p. 24, 130 So.3d at 905 and *Faucheaux v. Terrebonne Consol. Government*, 615 So.2d 289, 292 (La. 1993)).

Plaintiff argues that the trial court erred in granting the motion for summary judgment and holding Defendant owes no duty of care to its lessees' guests to protect against criminal activity because genuine issues of material fact remain for trial.[5] Plaintiff claims risk of violence was foreseeable because Defendant knew of numerous acts of violence at the apartment, and Defendant failed to implement the appropriate measures to address the risk of harm.

Louisiana courts have found that a landowner/lessor owes no duty to protect a lessee (or its guests) against misconduct of third persons in the absence of some special relationship or assumed duty by the landowner/lessor to provide security. *See Salafian v. Gabriel*, 2013-1399, p. 6 (La. App. 4 Cir. 7/16/14), 146 So.3d 753, 756 (stating "[a]s to the duty owed by a landlord to a tenant, this court has previously held that unless there is some special relationship between the landlord and tenant, or where the landlord has assumed an implied or expressed obligation to the tenant and breached that duty, the landlord/lessor has no duty to protect his tenant from harm sustained as a result of acts of third person"); *Cornelius v.*

---

[5] Plaintiff also claims that the trial court erred in granting the motion because genuine issues of material fact exist as to whether Defendant owed a duty under the terms of the lease. Plaintiff points out that under the lease, Defendant prohibited "occupants and guests" from "discharging a firearm" and "possessing a gun … in the common area in a way that may alarm others." However, however, there is no language in the lease that indicates that Defendant contractually assumed the duty to provide security and protect its lessee's guests from third party criminal acts. As such, it appears that Plaintiff's argument lacks merit in this regard.

*Housing Authority of New Orleans*, 539 So.2d 1250 (La. App. 4 Cir.1989) (finding that the landlord had no duty to provide security in housing development); *Landry*, 446 So.2d at 1250 (finding the lessor, the owner of parking lot, owed no duty to protect guest of an innkeeper which leased such lot; and thus, lessor was not liable to the innkeeper's guest for injuries from assault).[6]

On the other hand, "[t]he general rule is that the owner or custodian of property has a duty to keep the premises in a reasonably safe condition." *Farrell v. Circle K Stores, Inc.*, 2022-00849 (La. 3/17/23), 359 So.3d 467, 473 (citing La. C.C. arts. 2315, 2316, 2317, and 2317.1). "The owner or custodian must discover any unreasonably dangerous condition on the premises, and either correct the condition or warn potential victims of its existence." *Id*., at p. 6 359 So.3d at 473-74.

---

[6] It is important to note that the source of the legal proposition that a landlord is not responsible for criminal acts of third parties appears to stem from prior codal provision La. C.C. art. 2703 addressing "disturbances of possession." *See Landry*, 446 So.2d at 1250 (citing La. C.C. art. 2703 for authority that the landlord has no duty to protect a lessee or its guests from the tortious acts of third persons). This Court, in *Cornelius,* 539 So.2d at 1250, noted that and it was "doubtful whether that article [La. C.C. art. 2703] was meant to apply to personal injury caused by a third person" as the "the word 'disturbance' in 2703, when read with article (2704) clearly refers to disturbances in possession by a third person." The *Cornelius* Court further noted that Louisiana courts have nevertheless interpreted prior article 2703 to "support the rule of law that, unless there is some *special relationship* existing between the landlord and tenant, or where the landlord *had assumed an implied or express obligation* to provide security to the tenant and breached that duty, the landlord/lessor has no duty to protect his tenant from harm sustained as a result of acts of third persons." *Id*. at p. 1251-1252 (emphasis in original). Subsequently, the Louisiana Supreme Court in *Potter v. First Fed. Sav. & Loan Ass'n of Scotlandville*, 615 So.2d 318, 320 (La. 1993), found that prior article La. C.C. art 2703 does not immune landlords from liability in the context of suit of a tenant, who was raped in robbed in the parking lot of her apartment complex. The Court noted that "*Disturbances* as used in articles 2703 and 2704 [] refers to disturbances of the lessee's possession by third persons in the context of the lessor's implied contractual warranties of article 2692." The *Potter* Court then found that that the "lessee's right to seek redress from the lessor on claims that the lessor breached obligations *ex contractu* and *ex delicto* are unaffected by article 2703."

Moreover, Louisiana Supreme Court has held that business owners "have a duty to implement reasonable measures to protect their patrons from criminal acts when those acts are foreseeable." *Posecai,* 1999-1222, p. 5, 752 So.2d at 766. The *Posecai* Court adopted a balancing test to be used in deciding whether a business owed a duty of care to protect its customers from the criminal acts of third parties:

> The foreseeability of the crime risk on the defendant's property and the gravity of the risk determine the existence and the extent of the defendant's duty. The greater the foreseeability and gravity of the harm, the greater the duty of care that will be imposed on the business. A very high degree of foreseeability is required to give rise to a duty to post security guards, but a lower degree of foreseeability may support a duty to implement lesser security measures such as using surveillance cameras, installing improved lighting or fencing, or trimming shrubbery. The plaintiff has the burden of establishing the duty the defendant owed under the circumstances.

> The foreseeability and gravity of the harm are to be determined by the facts and circumstances of the case. The most important factor to be considered is the existence, frequency and similarity of prior incidents of crime on the premises, but the location, nature and condition of the property should also be taken into account. It is highly unlikely that a crime risk will be sufficiently foreseeable for the imposition of a duty to provide security guards if there have not been previous instances of crime on the business' premises.

*Id.*, 1999-1222, pp. 8-9, 752 So.2d 762, 768.

The Louisiana Supreme Court in *Ponceti*, 2011-2711, pp. 1, 3-4, 93 So.3d at 1251, 1252-53, has also applied this same business owner balancing test in analyzing whether an apartment complex owner/lessor had a duty to protect a resident "from persons riding bicycles on the sidewalks of the complex" on a motion for summary judgment. The *Ponceti* Court emphasized the significance of foreseeability prior to imposing a duty, noting that: "foreseeability and the gravity of the harm are to be determined by the facts and circumstances of the case" and "the existence, frequency, and similarity of prior incidents" on the premises is the most important factor. *Id.*, pp. 3, 93 So.3d at 1252-53; *see also Strauss v.*

12

*Ironshore Specialty Ins. Co.*, *unpub.*, 2020-0411, p. 4 (La. App. 1 Cir. 12/30/20) 2020 WL 7770879 at *2 (employing the balancing test and analyzing foreseeability in assessed whether an owner of apartment complex had a duty to protect plaintiff, who was shot in an armed robbery, from criminal acts by a third party). The Court ultimately found that the owner/lessor had no duty of protection because there was no evidence of any prior injuries as a result of individuals riding bicycles in the courtyard or sidewalks of the apartment complex. *Ponceti*, p. 4, 93 So.3d at 1253. Nevertheless, the Louisiana Supreme Court recognized that a duty may arise on the part of the owner/lessor to protect against acts of a third party when that act is foreseeable. *Ponceti*, pp. 2-3, 93 So.3d at 1252-53.

In the present case, genuine issues of material fact exist as to whether the criminal activity at the apartment was foreseeable such that it would impose a duty on Defendant and whether Defendant had or assumed a duty to provide adequate security to maintain the premises in a reasonably safe condition. In her affidavit, Manning stated that the apartment complex was located in a high crime area and that there were previous incidents of violent crime on the property.[7]

---

[7] As noted earlier, Defendant objected to the exhibits Plaintiff offered in opposition as inappropriate summary judgment evidence. The trial court only ruled on the deposition of Ratchford and did not specifically address the other objections at the hearing. However, the video, the news articles, and the Google reviews are likewise not appropriate evidence on summary judgment. La. C.C.P. Art. 966(A)(4) states that the "only documents that may be filed or referenced in support of or in opposition to the motion [for summary judgment] are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, certified copies of public documents or public records, certified copies of insurance policies, authentic acts, private acts duly acknowledged, promissory notes and assignments thereof, written stipulations, and admissions." It is well established that unverified and/or unauthenticated documents are not competent evidence on motions for summary judgment. *Belknap v. Ancira*, 2022-0736, p. 5 (La. App. 4 Cir. 11/17/22), 352 So.3d 136, 139 (citing *Griffin v. Carrington Place, unpub.*, 2021-0098, p. 6 (La. App. 4 Cir. 4/7/21), 2021 WL 1290634, *4). This Court has repeatedly held that "[i]n meeting the burden of proof, unverified documents, such as letters or reports, annexed to motions for summary judgment are not self-proving and therefore will not be considered." *Belknap v. Ancira*, 2022-0736, p. 6 (La. App. 4 Cir. 11/17/22), 352 So.3d 136, 139

Also, the record provides there was a security booth and gate at the entrance of the parking lot of the apartment complex. Manning attested that she observed security problems prior to and on the night of the incident. She stated that the security booth at the apartment complex was vacant, and the security gate was non-operable. Manning further attested that despite the existence of a security booth, there was "never" or "rarely" a guard on duty and the guard booth looked unused. Moreover, Defendant admitted in its reply memorandum in support of its motion for summary judgment that it "did not hire a security provider to furnish services" nor did it "contract with any third parties" to provide security at the apartment complex on the day of the incident. Defendant also did not dispute that it did not have "specific protocols or procedures for security" at the apartment complex. Further, Manning indicated there were no working security cameras on the premises.

A trial court cannot make credibility determinations on a motion for summary judgment and it must assume that all affiants are credible. *Phelps Dunbar, L.L.P. v. Stout*, 2004-0785, p. 3 (La. App. 4 Cir. 6/15/05), 914 So.2d 44, 47 (citing *Independent Fire Insurance Co. v. Sunbeam Corp.*, 1999-2181, pp. 16–

---

(quoting *Griffin*, 2021-0098, p. 7, 2021 WL 1290634, *3 and *Daniel v. Clarion Inn & Suites*, 16-0760, p. 10 (La. App. 4 Cir. 2/22/17), 214 So.3d 38, 44); *see also Passon v. Fields*, 50,635, pp. 2-3 (La. App. 2 Cir. 5/18/16), 196 So.3d 645, 648–49 ("while a newspaper article is admissible simply to prove that the article exists, when a party submits a newspaper article to prove the truth of the matter asserted, the evidence is hearsay, and the trial court must find the evidence inadmissible). While Manning's affidavit does reference the news articles and Google reviews, she is not the appropriate party to certify or authenticate these documents. The video referenced in the opposition memorandum was likewise not properly verified. Because the video, news articles, and Google reviews were not properly authenticated, these exhibits were inadmissible as summary judgment evidence and we decline to consider them. *See Shear v. Trail Blazers, Inc.*, 2021-00873, pp. 4-5 (La. 12/21/21), 329 So.3d 819, 823 (refusing to consider photographs that were not properly submitted on summary judgment).

14

17 (La. 2/29/00), 755 So.2d 226, 236). Further, "factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor." *M.R. Pittman Grp., L.L.C. v. Plaquemines Par. Gov't,* 2015-0860, p. 11 (La. App. 4 Cir. 12/2/15), 182 So.3d 312, 320 (citing *Citron v. Gentilly Carnival Club, Inc.*, 2014-1096, p. 12 (La. App. 4 Cir. 4/15/15), 165 So.3d 304, 312). Additionally, this Court in *Weddborn v. Doe,* 2015-1088, pp. 4, 11 (La. App. 4 Cir. 5/4/16), 194 So.3d 80, 84, 88, recognized that a self-serving affidavit can create an issue of material fact on a motion for summary judgment.[8]

Moreover, while duty is a question of law, whether a duty exists, and the extent of that duty is dependent upon the facts and circumstances of the case, and the relationship of the parties. *FIE, LLC,* 2016-0843, p. 23, 241 So.3d at 392. Foreseeability of a risk of harm is likewise determinative of the facts and circumstances.  *Ponceti*, pp. 2-3, 93 So.3d at 1252-53.

We find that Manning's statements regarding the prior incidents of crime on the property and the lack of security measures implemented by Defendant is sufficient to create an issue of fact for trial as to whether the shooting of decedent was foreseeable and as to whether Defendant had a duty to provide security to its guests under the circumstances. Accordingly, we find that the trial court erred in granting summary judgment in favor of Defendant.

Furthermore, we find that additional discovery is necessary such that the matter is not ripe for summary judgment at this time.  This Court in *Roadrunner Transp. Sys. v. Brown*, 2017-0040, pp. 11-12 (La. App. 4 Cir. 5/10/17), 219 So.3d

---

[8] The Court found the plaintiff-insured's sworn statement denying she executed a UM rejection form established a question of credibility.

1265, 1272–73, outlined the following factors to consider if a motion for summary judgment would be premature based on inadequate discovery:

>  (i) whether the party was ready to go to trial,
>
> (ii) whether the party indicated what additional discovery was needed,
>
> (iii) whether the party took any steps to conduct additional discovery during the period between the filing of the motion and the hearing on it, and
>
> (iv) whether the discovery issue was raised in the trial court before the entry of the summary judgment.

*Id.* (quoting *Bass Partnership v. Fortmayer*, 2004-1438, p. 10 (La. App. 4 Cir. 3/9/05), 899 So.2d 68, 75.

Here, it is undisputed that the matter is not ready to go to trial as it has not yet been scheduled. The record also shows that motions to compel were filed against co-defendant Lynd in 2022, and related consent judgments were executed, prior the filing of motion for summary judgment. Although the motions did not concern Defendant, Lynd is the alleged property manager of the apartment complex and that discovery possibly bears on Defendant's liability. Moreover, Plaintiff named the witnesses she needs to depose, i.e., "Dominque Delpit, Janelle J. Robert, and other long-tenured employees of the apartment complex." Defendant also conceded in his reply that Plaintiff identified and sought to depose additional witnesses between the filing of the motion for summary judgment and the hearing. Additionally, Plaintiff raised the issue of inadequate discovery in her opposition to summary judgment before the trial court. The aforementioned factors thus weigh in favor of a finding that there was insufficient discovery and that the entry of summary judgment was premature.

**CONCLUSION**

For the foregoing reasons, we reverse the trial court's decision to grant

summary judgment in favor of Defendant and remand for further proceedings.

**REVERSED AND REMANDED**