1PLOTKIN, Judge.
Defendants the City of New Orleans and FCS Entertainment appeal a trial court judgment awarding plaintiff Sabrina Bridges $36,422.38 for injuries sustained when she fell and broke her ankle while descending the steps at the Municipal Auditorium during a concert promoted by FCS Entertainment. Ms. Bridges answered the appeal, contesting the trial judge’s decision to assign her 35 percent comparative fault and seeking an increase in the $25,000 general damages awarded by the trial court. For the reasons discussed below, we reverse the trial court judgment and dismiss Ms. Bridges’ case against FCS Entertainment and the City. Facts
On February 14, 1998, Ms. Bridges and two neighbors, Mary Horace and Lynnette Beasley, attended a Dru Hill concert at the Municipal Auditorium in the City of New Orleans. Several musical acts performed at the concert, with Dru Hill taking the stage last, after two or three other acts. Between each of the acts, the house lights were turned on for intermissions, and the stage was reconfigured. About ten minutes into Dru Hill’s act, Ms. Bridges left her seat to go to the | ^bathroom. As she was descending the stairs, she fell, breaking her right ankle in three places and landing on her right foot. Ms. Bridges was taken to the emergency room at University Hospital, where she was diagnosed as having suffered a trimalleolar right ankle fracture and released with crutches. Three days later, Ms. Bridges underwent an open reduction and internal fixation of both the right fibula and the right medial malleolus, which left a scar on both the inside and outside of her ankle.
Ms. Bridges filed suit against the City of New Orleans, as the owner of the Municipal Auditorium, and FCS Entertainment, as the promoter of the Dru Hill concert. Following a trial, the trial court entered judgment against both of the named defendants, and against First Financial Insurance Co., which issued a policy in favor of the defendants for the date of the concert. The trial court awarded Ms. Bridges the following damages: $25,000 in general damages, $8,407.98 in stipulated medical expenses [1], and $3,014.40 in stipulated lost *693 wages. The damage award was reduced by her fault, which the trial court assessed at 35 percent. In reasons for judgment, the trial court stated, in pertinent part, as follows:
The Court finds negligence on behalf of the City and the promoter in that they allowed vendors to go up and down the dark, steep stairs selling drinks which spilled causing the stairs to be slippery and unsafe. During the entire duration of the concert, no inspection of the steps nor clean-up of the steps took place.
The plaintiff is also negligent for not looking 'at the steps and for not holding on to the handrail when possible.
The City and FCS Entertainment appeal, claiming that the trial court judgment is manifestly erroneous because Ms. Bridges failed to meet her burden of proof.
[ ^.Liability of the City of New Orleans
On appeal, the City claims that Ms. Bridges failed to meet her burden of proving that the City is liable for Ms. Bridges’ injuries under the provisions of LSA-R.S. 9:2800, which addresses limitations of liability for public bodies. Under the provisions of that statute, public entities in the State of Louisiana, including the City, may not be held liable for injuries caused by things within their care and custody under either a negligence or a strict liability theory unless the injured party proves the following three things:
(1) that the entity had actual or constructive notice of the dangerous conditions prior to the occurrence,
(2) that the entity had a reasonable opportunity to remedy the defect, and
(3) that the entity failed to remedy the defect.
Howard v. Derokey, 98-0893, p. 5 (La.App. 4 Cir. 2/10/99), 729 So.2d 654, 657. Constructive notice is defined by LSA-R.S. 9:2800(C) as the “the existence of facts which infer actual knowledge.” Generally, a finding of constructive notice is appropriate if a court finds that “the conditions which caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury.” Maldonado v. Louisiana Superdome Commission, 95-2490, p. 6-7 (La.App. 4 Cir. 1/22/97), 687 So.2d 1087, 1092.
The Maldonado case involved facts somewhat similar to the facts presented by the instant case. In Maldonado, the plaintiff slipped and fell in a large puddle of liquid just prior to entering the Super-dome to attend a Saints game. This court affirmed a trial court judgment against the State of Louisiana, through the | ^Louisiana Stadium and Exposition District and Facility Management of Louisiana, Inc. (“Su-perdome”). After summarizing the testimony of a number of different witnesses presented by the plaintiffs in that case, the court stated as follows:
This evidence amply supports the trial court’s conclusion that the Superdome had constructive notice of the spillage that caused Mr. Maldonado to fall, as well as an opportunity to correct the condition. Despite awareness of the patrons’ tendency to simply dump cups and trash at the doorways, Ms. Jones acknowledged that clean-up efforts are frequently delayed until the number of people entering decreases, which could be an hour after the kick-off. Additionally, although all employees are supposed to look for and report potential hazards, it is apparent that in this case *694 no one inspected the area at issue, even after Mr. Maldonado, visibly wet and shaken, pointed out the location where he had fallen to Mr. Jones and other employees at the turnstiles. Mr. Maldonado’s testimony concerning the location and size of the wet area at the time of his arrival was unrefuted, and is suggestive of a condition that had existed for a substantial period of time.
The trial court is vested with much discretion in assessing the credibility of witnesses and making factual inferences from the evidence presented. Davis v. Schwegmann Giant Super Markets, 92-2051, p. 10 (La.App. 4th Cir.1/13/94), 631 So.2d 479, 484. The conclusion that the Superdome had constructive notice of the condition was a factual finding. An appellate court cannot reverse a trial court’s decision based on factual findings and reasonable evaluations of credibility unless those conclusions are clearly wrong. Stobart v. State Through DOTD, 617 So.2d 880 (La.1998); see also, Rosell v. ESCO, 549 So.2d 840 (La.1989). We find no error in the trial court’s conclusion that the Superdome had constructive notice of the spill which caused Mr. Maldonado’s slip and fall.
95-2490 at 8-9, 687 So.2d 1087, 1093.
At trial in this case, Ms. Bridges and her companions, Ms. Horace and Ms. Beasley, all testified that the step where Ms. Bridges fell was wet after Ms. Bridges’ fall. That testimony was corroborated by Ms. Bridges’ sister, Ms. Sandra Cowart, who learned of Ms. Bridges’ fall as she was preparing to leave the concert and went to the location where Ms. Bridges was waiting for help. Ms. Horace said that it looked like ice had melted or something had been spilled. Additionally, Ms. Horace stated that she never saw anyone from the auditorium staff inspecting the Isstairs during the time that they were there. However, Ms. Horace also testified that she did not know how long the substance had been present on the stairs and that she did not know who had put it there. Ms. Horace did say however that vendors were selling beer and soft drinks from the stairs throughout the concert. Ms. Beasley said that she saw a “beer man,” but also stated that she went to the concession stand to get something to eat and drink right after her party arrived at the concert. Ms. Bridges said that vendors were selling sodas in the aisles.
Considering all of the record evidence, we find that the trial judge was manifestly erroneous in this case when it found Ms. Bridges met her burden of proving that the City had actual or constructive notice of the dangerous conditions of the stairs prior to Ms. Bridges’ fall. This case is clearly distinguishable from the Maldonado case, in which the plaintiff presented evidence of another patron who saw water in the area 30 minutes prior to the plaintiffs fall, as well as testimony from various members of the Superdome staff concerning inspection and cleanup procedures.
The record in this case is simply devoid of evidence of “the existence of facts which infer actual knowledge” on the part of the City. LSA-R.S. 9:2800(C). Moreover, there is no evidence that “the conditions which caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury.” Maldonado, 95-2490 at 6-7, 687 at 1092. In this case, the only evidence concerning inspection and cleanup was Ms. Horace’s answer to a question about whether she personally had seen any auditorium employee inspecting the aisles during the performance. That evidence is not sufficient to prove that the auditorium did not have an adequate inspection sys *695 tem IfiOr that the City did not exercise “ordinary care and diligence” to learn of any hazardous conditions on the stairs. Ms. Bridges failed to present the testimony of anyone who saw the wet area on the stairs prior to her fall or other evidence of who caused the spill or when it occurred. The only fact proven by the evidence presented by Ms. Bridges is that the stair was wet after Ms. Bridges’ fall. In short, the record evidence is insufficient to support the trial judge’s finding that “[djuring the entire duration of the concert, no inspection of the steps nor clean-up of the steps took place.” In the absence of evidence of constructive notice, the trial court improperly found that the City was liable for Ms. Bridges’ fall.
Liability of FCS Entertainment
FCS Entertainment claims that Ms. Bridges failed to carry her burden of proving that her injuries were caused by its negligence because she failed to establish that FCS Entertainment, as promoter of the concert, had any duty to protect her from the danger that someone, perhaps a beer/ soft drink vendor, would spill liquid on the stairs. This court most recently described a plaintiffs burden of proof in a negligence action in Fleming v. Hilton Hotels Corp., 99-1996 (La.App. 4 Cir. 7/12/00), 774 So.2d 174, as follows:
Liability based on negligence is present when a plaintiff, applying a duty risk analysis, is able to establish the following: the conduct is a cause in fact of the resulting harm; the defendant owed a duty to the plaintiff; the duty was breached; and the risk of harm was within the scope of the duty. Fox v. Board of Supervisors of LSU, 576 So.2d 978, 981 (La.1991); Mart v. Hill, 505 So.2d 1120 (La.1987); Hill v. Lundin & Assoc., Inc., 260 La. 542, 256 So.2d 620 (1972). Furthermore, in determining whether liability exist[s] under a duty-risk analysis, a plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, that defendant owed a duty to plaintiff that defendant breached, and the risk of harm was within the scope of the protection afforded by the duty breached. Hartman v. Vermilion Parish Police Jury, 94-893 (La.App. 3 Cir 3/1/95), 651 So.2d 476, 479, writ denied, 95-0778 (La.5/5/95), 654 So.2d 326, citing Campbell v. Louisiana Dept. of Trans. and Dev., 94-1052 (La.1/17/95), 648 So.2d 898. The existence of a duty is a question of law and similarly the question as to whether a particular risk is included within the scope of a particular duty is a legal issue to be resolved by the court. Dillon v. Louisiana Power & Light, 557 So.2d 293, 295 (La.App. 4 Cir.1990); LeBlanc v. Wall, 430 So.2d 1130 (La.App. 1 Cir.1983), writ denied, 438 So.2d 571 (1983).
Id. at 2, 774 So.2d at 176.
Our review of the record in the instant case reveals that Ms. Bridges failed to present any evidence whatsoever to establish the existence of a duty on the part of FCS Entertainment, as promoter of the concert, to protect Ms. Bridges from the risk of slipping on spilled water on the stairs of the Municipal Auditorium. The only evidence connecting FCS Entertainment to this concert is Ms. Bridges’ ticket stub, which was entered into the record on the stipulation of the parties. That ticket stub contains the name of FCS Entertainment. However, Ms. Bridges presented no evidence to show that FCS Entertainment hired vendors or was otherwise involved in the concert in any manner other than its relationship to the performers. In the absence of evidence concerning FCS Entertainment’s duty to Ms. Bridges, the trial court was manifest erroneous in entering judgment against FCS Entertainment.
*696 Liability of First Financial
The City and FCS Entertainment allege that the trial court improperly entered judgment against First Financial because First Financial was never named as a defendant in the case. Since Ms. Bridges failed to carry her burden of proof regarding the liability of the insured parties, the City and FCS Entertainment, she also failed to carry her burden of proof against their insurer, First Financial.
Conclusion
Accordingly, the trial court judgment in favor of Ms. Bridges and against the City and FCS Entertainment is reversed and Ms. Bridges’ claims against the City and FCS Entertainment are dismissed. The issues raised by Ms. Bridges in her answer to the appeal are pretermitted.
REVERSED.

. The medical expenses award was expressly made subject to the lien and intervention filed *693 by the Medical Center of Louisiana at New Orleans.