MURRAY, Judge.
 

 _JjThe plaintiff, Warren Bourgeois, appeals the district court’s judgment dismissing his action against the St. Bernard Parish School Board [“the School Board”] on the basis that the plaintiff failed to prove the defendant’s liability at trial. For reasons that follow, we affirm.
 

 FACTS AND PROCEEDINGS BELOW
 

 On December 16, 2003, the plaintiff was injured on the grounds of the Lacoste Elementary School in St. Bernard Parish, where he had gone to see his granddaughter perform in a school play. It is undis
 
 *950
 
 puted that Mr. Bourgeois fell, injuring his hand, arm, shoulder and knee, while attempting to negotiate a single step up from the parking lot level onto the concrete porch in front of the school. He was accompanied by his wife, Romma, and his son, Warren, Jr., when he fell. On December 4, 2004, Mr. Bourgeois filed this suit alleging that his fall was caused by the slippery surface of the concrete step and/or porch.
 

 A bench trial was held on November 30, 2009. On January 28, 2010, the trial court rendered a written judgment in favor of the School Board, dismissing the 12plaintiffs case. In accompanying Reasons for Judgment, the trial court noted that the plaintiff had failed to establish the existence of skateboard wax at the location of Mr. Bourgeois’ fall at any time closely related to the date of the fall. Moreover, the court found that Mr. Bourgeois had failed to prove that he had slipped rather than merely tripped while attempting to step up. Finally, the trial court noted the complete lack of evidence to prove that any foreign substance on the step had posed an unreasonable risk of harm, or that the School Board had actual or constructive knowledge of the dangerous condition in sufficient time to repair it, which elements are necessary to establish liability on the part of the School Board.
 

 ISSUES
 

 The plaintiff appeals this judgment on the sole basis that the trial court erred by failing to give sufficient weight to the testimony of Ms. Belinda Unbehagan, a disinterested witness.
 
 [1]
 
 DISCUSSION
 

 In
 
 Stobart v. State, Dept. of Transp. and Development,
 
 617 So.2d 880, 882, the Louisiana Supreme Court explained that the appellate standard of review for a factual finding of the trial court is the manifest error/clearly wrong standard. According to this standard, if the trial court’s factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
 
 Id.
 
 at 882-83.
 

 |sTo establish the liability of the School Board, the plaintiff was required to prove each of the elements listed by La. R.S. 9:2800, which imposes a limitation on the liability of a public body for damages caused by the condition of public buildings or premises. La. R.S. 9:2800(C) provides, in pertinent part:
 

 ... [N]o person shall have a cause of action based solely upon liability imposed under Civil Code article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
 

 Five witnesses testified at the trial of the instant matter. Regarding his fall, Mr. Bourgeois, testified: “I put my foot on the edge of the curb and the opposite foot just slid right off of the curb and I went down face first ...” He stated that he did not know what caused him to fall. To rebut his testimony, the defendant introduced two prior unsworn statements of the
 
 *951
 
 plaintiff (the written history he gave at the emergency room the night he fell and a taped statement he gave to the school district’s insurance claims service), which both indicated he had caught the tip of his shoe and tripped rather than slipped on the step. At trial, Mr. Bourgeois denied that he had tripped.
 

 The plaintiffs daughter, Lisa Darce, who was inside the school at the time the plaintiff fell, testified that she went back to the school during the Christmas holidays (a week or so after her father’s fall) to take video pictures of the area where her father had fallen. While she was filming, Ms. Belinda Unbehagan, who also had children attending the school, drove up in her car and asked Ms. Darce what she was doing. When Ms. Darce explained, Ms. Unbeha-gan remarked that Ms. Darce’s father probably had slipped on skateboard wax. Ms. Unbehagan then |4pointed out a discoloration on the concrete step that she claimed was wax put there by skateboarders who sometimes used the area after school hours. Although Ms. Unbehagan never got out of her car, Ms. Darce did bend down and touch the step, which she said felt smooth, not rough like concrete. Ms. Darce believed there was a foreign substance on the step, but she could not tell what it was, except for Ms. Unbeha-gan’s assertion that it was skateboard wax.
 

 Ms. Unbehagan testified that she was a longtime parent volunteer at the school and a past president of the PTA. She also lived near the school and was very familiar with the “bus loading area,” where the accident had occurred. When she noticed Ms. Darce taking pictures of that area during the Christmas holidays, she stopped to ask why. After learning of the accident, Ms. Unbehagan told Ms. Darce that she had previously seen wax on the top of the step and had scraped it with her finger. It had the bubble-gum smell of “sex wax,” which she knew to be a type of wax used by skateboarders. When she had worked at the school from 1999 to 2003, Ms. Unbehagan had often seen skateboarders in the school backyard and parking lot on weekends and had run them off. She had never actually seen them applying wax to that particular step because they ran when they saw her car, but she had seen them from a distance, and they had appeared to be applying something to the step with their hands. The skateboarders also moved the concrete barricades to make rails. Ms. Unbehagan had discussed the skateboarding problem with the school’s principal and maintenance coordinator on several occasions; she had told them the skateboarders were “nicking everything up and waxing everything up.” However, she had never told or shown the principal or the maintenance supervisor that there was wax on that particular step or in that particular area of the school.
 

 | fiMs. Joy O’Connor, who was principal of the school for five years including the time of the accident in December of 2003, testified that she knew and trusted Ms. Unbehagan. Although Ms. O’Connor was aware prior to December, 2003, that there was skateboarding going on in the backyard and front loading areas of the school after hours, she did not recall Ms. Unbeha-gan ever having told her about any skateboard wax on the premises. She had also never had any complaints from anyone else about skateboard wax. If any wax had been present, she would have ordered the school custodian to clean it up. If the custodian could not accomplish that, Ms. O’Connor would have put in a work order to Mr. Middleton, the maintenance coordinator for the district. Ms. O’Connor also testified that during her five years as principal, approximately five hundred children and teachers had used the bus loading
 
 *952
 
 area daily, but no one had ever reported having slipped.
 

 The final witness was the maintenance coordinator for the school district, Mr. Edwin Middleton. He acknowledged that Ms. Unbehagan had complained about skateboarders abusing the playground equipment in the backyard on weekends. Hence, he had installed a three-foot fence around the backyard area. Ms. Unbeha-gan had complained to him about skateboarders, but not about wax. He had never had any complaints from anyone concerning skateboard wax or wax in the front loading area or on the front porch. He also identified photographs of the area where the accident had occurred, and said he believed the discoloration that appeared on the step had been caused by rainwater runoff; Mr. Middleton, who oversaw maintenance at fifteen schools, said he had seen the same type of discoloration of concrete on the steps of other schools and public buildings, such as the courthouse.
 

 | fiAfter reviewing all the evidence in this case, we cannot say the trial court committed manifest error in its factual findings. Although the plaintiff contends that the trial court improperly weighed the testimony of Ms. Unbehagan, a disinterested witness, versus that of Ms. O’Connor and Mr. Middleton, who were school board employees, the record does not support this contention. The trial court judge specifically noted that he believed Ms. Unbeha-gan, but had a problem with the lack of any testimony from her regarding the precise timing of her observations and/or her complaints to the school personnel. As the trial court noted in its Reasons for Judgment:
 

 The testimony of Ms. Unbehagan, while well-intended, simply is not sufficient to establish that on December 16, 2003, there was skateboard wax on the concrete where Mr. Bourgeois fell. The testimony simply is not specific enough as to a time frame and location in which she saw wax being applied by skateboarders .... Additionally, even if the Court believed Mr. Bourgeois had slipped as opposed to tripped, plaintiff still has not proven the remaining elements to afford recovery.... Specifically, plaintiff must prove that even if skateboard wax had been present at this location at some time, it was still so slippery that it posed an unreasonable risk of harm. There is simply no evidence other than Ms. Darce’s testimony that it did not feel like concrete, that the fall area was unreasonably dangerous. This is legally insufficient to prove a dangerous condition.... Finally, the last element is also lacking in that there is an absence of evidence that the school board had actual or constructive notice of any conditions at this location. Ms. Unbehagan’s testimony simply does not provide sufficient details that relate it to this time frame rather than a number of years previously.
 

 We find the record supports the trial court’s conclusion that Ms. Unbehagan’s testimony, regardless of its credibility or of the weight given to it, did not have sufficient content to establish the elements necessary to impose liability on the School Board under La. R.S. 9:2800. Because the trial court’s conclusion is reasonable based upon the record, we find no manifest error.
 

 | CONCLUSION
 

 Accordingly, for the reasons stated, we affirm the judgment of the trial court.
 

 AFFIRMED.
 

 [1]
 

 . The plaintiff's brief noted that his second assignment of error, addressing whether the parties had agreed to a stipulation concerning the amount of damages, need be considered only in the event this court reversed the trial court's finding of no liability on the part of the School Board.