| | | |
|---|---|---|
| **RITZY TORREZ** | * | **NO. 2024-CA-0598** |
| **VERSUS** | * | **COURT OF APPEAL** |
| **ST. BERNARD HOSPITAL FOUNDATION, INC.,** | * | **FOURTH CIRCUIT** |
| **LAMMICO, AND OCHSNER CLINIC FOUNDATION D/B/A** | * | **STATE OF LOUISIANA** |
| **OCHSNER HEALTH SYSTEM** | * * * * * * * | |

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 20-0220, DIVISION "E"
Honorable Eric A. Bopp
* * * * * *
**Judge Rachael D. Johnson**
* * * * * *
(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Paula A. Brown, Judge Rachael D. Johnson, Judge Nakisha Ervin-Knott)


 **LEDET, J, DISSENTS**
**JENKINS, J., DISSENTS WITH REASONS**

Matthew M. McLaren
MCLAREN LAW FIRM
820 Mazant Street
New Orleans, LA 70117

John J. Finckbeiner, Jr.
LAW OFFICE OF JOHN FINCKBEINER, JR.
2203 Pakenham Drive
Chalmette, LA 70043

        COUNSEL FOR PLAINTIFF/APPELLEE

Paul A. Tabary, III
Elizabeth R. Borne
Lacey Tabary
Melanie M. Licciardi
Alyssa Wineski
TABARY & BORNE, LLC
3 Courthouse Square
Chalmette, LA 70043

COUNSEL FOR DEFENDANT/APPELLANT

**REVERSED AND DISMISSED**
**JUNE 27, 2025**

Appellants, St. Bernard Parish Hospital Foundation, Inc., Louisiana Medical Mutual Insurance Company and Ochsner Clinic Foundation d/b/a Ochsner Health System (collectively referred to herein as "SBPH"), seek review of the June 25, 2024 district court judgment, finding SBPH liable for damages sustained by Appellee, Ritzy Torrez. We reverse the district court's judgment because Ms. Torrez failed to establish SBPH's liability pursuant to La. Rev. Stat. 9:2800, and we dismiss her claims against SBPH with prejudice.

**Facts and Procedural History**

This a personal injury case wherein Ms. Torrez alleges that she sustained injuries as a result of a slip and fall accident that occurred on February 19, 2019, as she entered SBPH's emergency room ("ER") in St. Bernard Parish. She filed suit against SBPH on February 18, 2020, alleging SBPH was negligent because it created a hazardous condition by failing to: protect its visitors by providing a safe passageway; post warning signs; or provide adequate and reasonable maintenance procedures. In 2021, SBPH moved for summary judgment; however, the motion was denied.

The district court bifurcated the trial of this matter. On June 6, 2024, a bench trial was held on the issue of liability. At the start of trial, the parties stipulated to the following: the accident occurred on February 19, 2019 at approximately 5:50 p.m., at the SBPH; at the time of the accident, SBPH had an insurance policy in place and coverage; and the authenticity of a video of the accident, joint exhibit J-1, which was played at trial. The only two witnesses to testify at trial were Ms. Torrez and SBPH's Director of Quality, Mary Lubrano.

At the conclusion of the trial on liability, the district court determined that SBPH was liable for Ms. Torrez's injuries based on the court's finding that she was a credible witness and that the security guard on duty at the time of her accident knew or should have known there was water on floor near the ER entrance:[1]

> In connection with all the testimony that I thought Ms. – like I said earlier, Ms. Torres [sic] was credible. I think there was, in fact, water there, and as the officer was making his rounds, maybe he didn't make note, but he knew or should have known that the water was there, and so, as such, I'm going to find that there is liability on the part of the hospital.

The district court rendered judgment on June 26, 2024, in conformity with its ruling at trial. SBPH filed this timely appeal.

On appeal, SBPH avers that grounds for reversal exist under both a *de novo* and manifest error standard of review:

1. The district court committed a legal error in failing to make a finding that there was a vice or defect which created an unreasonable risk of harm and failing to apply the correct legal standard constitutes legal error, therefore warranting a *de novo* review;
2. The district court legally erred in finding that Ms. Torrez met the heightened legal standards of proving SBPH had

---

[1] "[T]he district court's oral or written reasons for judgment form no part of the judgment and, . . appellate courts review judgments, not reasons for judgment." *Wooley v. Lucksinger*, 09-0571, pp. 77-8 (La. 4/1/11), 61 So.3d 507, 572 (citation omitted).

2

actual or constructive notice of an alleged vice or defect prior to the occurrence pursuant to La. Rev. Stat. 9:2800;

3. The district court committed a legal error when it failed to require Ms. Torrez to show SBPH had a reasonable opportunity to remedy the defect and failed to do so pursuant to La. Rev. Stat. 9:2800;

4. Alternatively, reversible error exists under the manifest standard error of review standard because the objective evidence clearly contradicts Ms. Torrez's testimony.

**Standard of Review**

Appellate courts may not set aside a trier of fact's findings in the absence of manifest error or unless those findings are clearly wrong. *Marshall ex rel. minor children v. Air Liquide-Big Three, Inc*., 08-0668, p. 5 (La. App. 4 Cir. 12/17/08), 2 So.3d 541, 546 (citations omitted). Further, where there is a "conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Rosell v. ESCO,* 549 So.2d 840, 844 (La.1989). The *Marshall* court further explained that underlying the application of the manifest error and clearly wrong standard is the appellate court's obligation to ascertain whether a factfinder's conclusions are reasonable:

> However, if a court of appeal determines that the trial court committed a reversible error of law or manifest error of fact, the court of appeal must ascertain the facts de novo from the record and render a judgment on the merits. *LeBlanc v. Stevenson*, 00-0157 (La.10/17/00), 770 So.2d 766. Although appellate courts should accord deference to the factfinder, they nonetheless have a constitutional duty to review facts. *Ambrose v. New Orleans Police Dep't Ambulance Serv.*, 93-3099, p. 8 (La.7/5/94), 639 So.2d 216, 221. Because appellate courts must perform this constitutional function, they have every right to determine whether the trial court ruling was clearly wrong based on the evidence or clearly without evidentiary support. *Id*. at p. 8-9, 639 So.2d at 221. The reviewing court must do more than simply

review the record for some evidence which supports or controverts the trial court's findings; it must instead review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. *Stobart v. State of Louisiana, through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La.1993). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was reasonable. *Id.* A basic principle which courts of review must follow is: if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.* at 882-883 (citing *Housley v. Cerise*, 579 So.2d 973 (La.1991)) (quoting *Sistler v. Liberty Mutual Ins. Co.*, 558 So.2d 1106, 1112 (La.1990)).

*Marshall*, 08-0668, pp. 5-6, 2 So.3d at 546.

Moreover, this Court has explained legal errors as follows:

"A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights." *Deutsche Bank Nat'l Tr. Co. as Tr. for Ameriquest Mortg. Sec. Inc. v. Price*, 21-0430, p. 6 (La. App. 4 Cir. 12/15/21), 333 So.3d 1280, 1284. Prejudicial errors are reversible errors, whereas an error that is not prejudicial is a harmless error that is not reversible. *Nielsen v. Nielsen*, 55,447, p. 7 (La. App. 2 Cir. 11/22/23), 375 So.3d 1042, 1048 (citation omitted). "When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo*." *Id.* (quoting *Key v. Monroe City Sch. Bd.*, 45,096 (La. App. 2 Cir. 3/10/10), 32 So.3d 1144).

*Jackson's Landing N. v. Phillips*, 23-0782, p. 3 (La. App. 4 Cir. 5/13/24), 390 So.3d 948, 950.

We find the district court committed legal error in its misapplication of La. Rev. Stat. 9:2800; therefore, we will review the case *sub judice* using a *de novo* standard of review.

**Custodial Liability: Misapplication of La. Rev. Stat. 9:2800**

SBPH alleges that the district court legally erred, pursuant to La. Rev. Stat. 9:2800, in finding that Ms. Torrez met the heightened legal standards of proving SBPH had actual or constructive notice of an alleged vice or defect prior to Ms. Torrez's accident and in failing to require Ms. Torrez demonstrate SBPH had a reasonable opportunity to remedy a defect and failed to do so.

**Applicable Law**

Public entities, including parish hospitals, are subject to the provisions of La. Rev. Stat. 9:2800, "which addresses limitations of liability for public bodies" for damages caused by the condition of buildings within their care and custody. *Bridges v. FCS Ent.*, 00-1041, p. 3 (La. App. 4 Cir. 5/23/01), 789 So.2d 691, 693. Louisiana Revised Statutes 9:2800, entitled *Limitation of liability for public bodies*, provides in pertinent part:

> A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
>
> . . .
>
> C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317[2] against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused

---

[2] "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. . . ." La. Civ. Code art. 2317.

the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

D. Constructive notice shall mean the existence of facts which infer actual knowledge.

"The effect of La. [Rev. Stat.] 9:2800 is to eliminate the distinction between strict liability and negligence claims against public entities by requiring proof of either actual or constructive notice of a defect before a public entity can be held liable for damages caused by the defect." *Cunningham v. City of Shreveport*, 39,873, p. 3 (La. App. 2 Cir. 8/9/05), 908 So.2d 1214, 1216 (citing *Jones v. Hawkins*, 98-1259, 98-1288, pp. 3-4 (La.03/19/99), 731 So.2d 216, 218). "Actual notice is given under La. [Rev. Stat.] 9:2800 by reporting the defect to a governmental employee who has a duty either to keep the property involved in good repair or to report dangerous conditions to the proper authorities.'' *Sewell v. Sewerage and Water Bd. of New Orleans,* 18-0996, p. 11 (La. App. 4 Cir. 5/29/19) 363 So.3d 474, 486 (quoting *Hanson v. Benelli*, 97-1467, p. 15 (La. App. 4 Cir. 9/30/98), 719 So.2d 627, 636)(internal quotation marks omitted). A finding of constructive notice, as defined in La. Rev. Stat. 9:2800(D), "is appropriate if a court finds that 'the conditions which caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury.'" *Bridges,* 00-1041, p. 3, 789 So.2d at 693 (quoting *Maldonado v. Louisiana Superdome Commission*, 95-2490, pp. 6-7 (La. App. 4 Cir. 1/22/97), 687 So.2d 1087, 1092).

"Liability is limited to cases in which the plaintiff can show that the public entity: (1) exercised care and custody of the defective thing; (2) had actual or

constructive notice of the particular vice or defect which caused the damage prior to the occurrence; (3) had a reasonable opportunity to remedy the defect; and (4) failed to remedy the defect." *Cunningham*, 39,873, p. 3, 908 So.2d at 1216 (citations omitted); *see also Bridges,* 00-1041, p. 3, 789 So.2d at 693. "Failure to meet any one of these statutory requirements will defeat a claim against the public entity." *Jefferson v. Nichols State Univ.*, 19-1137, p. 4 (La. App. 1 Cir. 5/11/20), 311 So.3d 1083, 1085.

Accordingly, in order for Ms. Torrez to prevail on her negligence claims she is required to prove the existence of a defect—that water was present on the ER entrance's floor—that was within SBPH's care and custody, which caused her damages. And further, she had to prove that SBPH, *prior to the occurrence*, had actual or constructive notice of the water and a reasonable opportunity to remove the water but failed to do so. We discuss below our finding that Ms. Torrez introduced insufficient evidence at trial to establish SBPH's statutory liability as there is no evidence or testimony regarding whether SBPH had actual or constructive knowledge of the water, if any, or that SBPH had a reasonable opportunity to remove the water but failed to do so.

**Discussion**

*Trial Testimony*

As stated above, only two witnesses testified in this matter. Ms. Torrez was the sole witness who testified on her behalf, and she also relied on the joint exhibit of the video of the accident.

Ms. Torrez testified that on February 19, 2019, she slipped and fell at SBPH's ER entrance as she was returning to the hospital to check on her mother, who had been admitted to SBPH for treatment earlier that day. Ms. Torrez initially

visited her mother around 2:00 p.m., expecting to follow her mother from SBPH, as the hospital transported her mother, to rehab. However, after waiting two hours with her mother for an ambulance, Ms. Torrez left the hospital, intending to return later.

Ms. Torrez explained that by the time she returned later that evening with a companion, it was raining outside. She testified that she parked in the ER parking lot area and began walking towards the ER entrance doors with her friend. As she did not have an umbrella, Ms. Torrez walked in the rain towards the entrance. She described the shoes she wore as leather-soled slipper-sandals and "flat shove-in split-toe white sandals."

As she stepped into the entrance area of SBPH's ER with her right foot, her foot landed on an uncovered area of tile flooring and slipped forward, causing her to land on her left knee and place one of her hands on the floor. She explained that she could feel the floor was wet and discovered her pants were also wet. She testified that after her friend helped her up, she approached the security guard seated in the ER lobby to inform him that she had fallen at the entrance. She explained that the guard listened to her, and, as she then preceded to the elevators to visit her mother, she witnessed the guard retrieve and place a cone labeled "wet" where she fell. She testified that she was not under the influence of drugs or alcohol when she fell and did not have issues with walking or her knees. While visiting her mother, Ms. Torrez informed a nurse about her fall. She went to the ER later that evening.

She further related that there was a mat near the ER entrance where she fell, but it was not flush with the threshold of the entrance door, so there was uncovered tile where her foot slipped. Ms. Torrez viewed the video of the accident and

8

identified the mat that she asserts should have been pulled up to the threshold. She asserts that the placement of the mat away from the threshold is also a defect.

On cross-examination, Ms. Torrez testified that she did see seven people traverse the ER entrance, prior to her entrance, without issue. She stated that she had no knowledge of or information regarding whether SBPH's employees, visitors or anyone else was aware of a dangerous problem at the ER entrance. She did not know if SBPH had any warnings or problems before she fell at the ER entrance. She had no idea how long the condition lasted. She further testified that the area where she fell, as depicted on the video, is a well-lit, totally dry, roof-covered area. This testimony tends to contradict her testimony that the floor was wet.

Ms. Lubrano testified that she oversees patient and visitor safety and physical environment safety in her role as Director of Quality at SBPH. She was not present at the hospital when Ms. Torrez's accident occurred. She explained that SBPH's policy is for employees to report hazards and events they observe. Thus, in the event of rain, if water is seen on the ground, employees must report it to Security or Environmental Services, which is housekeeping. When a hazard or wet floor is reported to staff, a "wet floor" sign is placed where the hazard is located.

She explained that she is unaware of SBPH having a policy requiring housekeeping to maintain entrances during rain events. Nor was she aware of any policies on mats or of security guards being told to adjust the placement of mats when there is a wet spot on the floor. She further testified that she did not know whether there was a SBPH policy stating that the floor mats at the ER entrance could not be placed at the threshold. She related that cones and wet floor signs are stored on the side of the ER entrance in case of a hazard.

9

Lastly, Ms. Lubrano testified that she is unaware of there being a heightened duty for security and staff to be aware of slippery conditions when it is raining. She related that one of the security officers on duty, Officer Robert Jourdan III ("Off. Jourdan"), prepared a post-accident report reflecting that there was no water on the floor.[3] Ms. Lubrano watched the video of the accident. She testified that she could not say whether the seven people who traversed the ER entrance before the accident tracked water where Ms. Torrez fell. She related that there were no reports of problems at the ER door prior to or after the accident, nor reports of people slipping and falling when it rained prior to this accident or since. After watching the video, she testified that she did not see damp or wet areas on the ER floor near the entrance, which she described as a well-lit and dry area. This testimony is consistent with Ms. Torrez's testimony that the floor of the entrance was dry and well-lit, as depicted in the video.

*SBPH's Surveillance Video*

The surveillance video is approximately four minutes in length and shows footage of a lighted and covered walkway with a cement floor leading to two sets of automatic-sliding glass double-doors. At the edge of the lighted walkway lies a black, seemingly rubber, mat just before the threshold of the first pair of sliding doors ("First Door") of the ER entrance. The flooring between the First Door and second set of sliding doors ("Second Door") is white and the center portion of the floor is covered by a long narrow floor mat that is approximately two to three feet past the First Door's threshold. The reflection of two lights can be seen on the uncovered portion of the white floors nearest to the First Door. The threshold of the Second Door opens to the ER lobby. To the left of the frame showing the ER

---

[3] The report was not introduced at trial.

10

entrance, is a view of the street, which appears wet under the street lights. The covered cement flooring leading to the ER entrance appears dry.

The first two minutes and 54 seconds of the video shows eight persons entering and/or exiting the ER entrance, including Off. Jourdan, prior to Ms. Torrez's arrival. Off. Jourdan is the last person to enter the ER entrance shortly before Ms. Torrez arrives. None of the aforementioned persons slipped and/or fell at or near the entrance.[4] The video shows that all but one of these persons wore thick-soled shoes, while the remaining person—who entered the ER wrapped in a pink blanket—wore blue socks and thick-soled slippers. No water can be seen on the white floor near the threshold of the First Door under the bright reflection of the lights above.

After Off. Jourdan returns to the ER, Ms. Torrez and her companion enter the frame, walking through the covered walkway. Ms. Torrez is wearing thin-soled, flip-flop-like shoes, with the top of her feet exposed. Her companion is wearing thick-soled sneakers. As the pair walks up to the First Door, Ms. Torrez places her right and then left foot onto the outdoor mat before proceeding to step past the First Door's threshold. Then, as Ms. Torrez steps with her right foot past the first threshold, her right foot slides on the white flooring up to the interior floor mat. Her left knee then hits the ground, near the interior mat, followed by her left hand, which she uses to brace herself.

Her companion, who did not fall, assists Ms. Torrez up off of the floor by placing her foot in the exact spot where Ms. Torrez had just stepped. As she regains her footing, Ms. Torrez turns back to examine the floor where she fell

_____

[4] Four people exited the hospital, while three people entered the emergency room prior to her arrival. Additionally, the security guard exited and re-entered the ER.

before she is assisted past the Second Door into the ER, where she walks up to a desk. Additionally, immediately after Ms. Torrez rose from the floor, a man walks past her and exits the ER without issue. He is wearing closed-toe shoes. The video shows that no one else slipped or fell as they walked through the ER entrance doors, and specifically, over the uncovered portion of flooring between the First and Second Doors.

*Analysis*

After reviewing the evidence and testimony in this matter, we find that the district court legally erred in finding that Ms. Torrez produced sufficient evidence to establish SBPH's liability under La. Rev. Stat. 9:2800.

The district court found Ms. Torrez credible and, as a result, believed her testimony that there was water on the ER entrance floor. We give deference to the district court's credibility determination. However, considering these cumulative facts under a *de novo* review, we question the district court's determination that Ms. Torrez, even if credible, carried her burden of proof under La. Rev. Stat. 9:2800. A district court's determination that a witness is credible differs from whether the content of the same witness's testimony is sufficient to carry a plaintiff's burden of proof under La. Rev. Stat. 9:2800. *Bourgeois v. St. Bernard Par. Sch. Bd.*, 10-1049, p. 6 (La. App. 4 Cir. 1/12/11), 55 So.3d 949, 952.

In *Bourgeois,* this Court affirmed a district court's dismissal of a plaintiff's suit in a slip and fall case brought against the St. Bernard Parish School Board. *Id.*, 10-1049, p. 1, 55 So.3d at 949-50. The plaintiff slipped after stepping onto a concrete step in the parking lot of a St. Bernard Parish public school. *Id.*, 10-1049, p. 1, 55 So.3d at 949-50. He alleged that the step where he fell was covered with skateboard wax. *Id.*, 10-1049, pp. 1-2, 55 So.3d at 950. Five witnesses testified at

trial, including the plaintiff; however, none of the other four witnesses were present when he fell. *Id.*, 10-1049, pp. 3-5, 55 So.3d at 950-52. The district court determined that the testimony of the plaintiff's star witness, who testified to knowing skateboarders would place wax on the step at issue, was inadequate. *Id.*, 10-1049, p. 6, 55 So.3d at 952. This Court affirmed the dismissal of the suit, finding that the evidence did not establish the elements of a cause of action, pursuant to La. Rev. Stat. 9:2800, permitting the imposition of liability on the School Board. *Id.*, 10-1049, pp. 6-7, 55 So.3d at 952. The *Bourgeois* court held that the record supported the district court's determination that the "well-intended" testimony of one of the plaintiff's witnesses—who could not attest to the time frame and location where she alleged wax had been applied on the day of the plaintiff's accident—was insufficient "to establish the elements necessary to impose liability on the School Board under La. [Rev. Stat.] 9:2800." *Id.*; *See also Peterson v. Jefferson Par.*, 95-711, p. 2 (La. App. 5 Cir. 5/28/97), 695 So.2d 1057, 1058 (holding that the plaintiff, who was the only witness to testify at trial, failed to offer evidence as to actual or constructive notice of a defect).

As noted earlier in this opinion, in order to prevail at the trial on liability, Ms. Torrez had to prove that there was a vice or defect at the hospital, that the hospital had actual or constructive notice of the vice or defect and that the hospital had a reasonable opportunity to remedy the defect and failed to do so. The trial judge found her credible and believed her testimony that there was water on the floor of the hospital entrance. This finding is sufficient to establish that Ms. Torrez met the burden of proof of the first element outlined by this Court in *Cunningham*. However, our *de novo* review reveals that Ms. Torrez failed to satisfy her burden of proof for the remaining three elements set forth in *Cunningham* when she did

13

not establish at trial that SBPH had actual or constructive notice of the alleged defect or that it had an opportunity to remedy the same prior to Ms. Torrez's fall, as statutorily required. As noted above, Ms. Torrez testified that she had no knowledge of or information regarding: whether SBPH's employees, visitors, or anyone else was aware of the existence of a defect on the ER entrance's floor; how long the condition lasted; or whether SBPH had any warnings or problems with water on the floor before she fell. There is no evidence or testimony contained in the record that the alleged foreign substance was present for a significant period of time to alert SBPH of the alleged defect. The record does reveal that several people, including Ms. Torrez's companion and the SBPH security guard, traversed the same area where she fell without incident. In fact, the surveillance video shows that when Ms. Torrez's companion went to assist her after she fell, she stepped in the exact same area where Ms. Torrez fell, and she was able to do so without issue. We find that the record does not support that SBPH had notice of the alleged defect and without notice, SBPH did not have a reasonable opportunity to remedy the alleged defects prior thereto pursuant to La. Rev. Stat. 9:2800.[5]

Accordingly, pursuant to *Bourgeois,* we find that the record does not support the district court's conclusion that Ms. Torrez, while credible, carried her burden of proof at trial under La. Rev. Stat. 9:2800. Therefore, we reverse the district court's judgment in favor of Ms. Torrez and dismiss her claims.

---

[5] We note that Ms. Torrez also asserts that the placement of the interior ER door mat was a defect because it was placed away from the threshold. However, she did not present any evidence or testimony that this indeed is a defect or hazardous condition other than her self-serving assertions. Ms. Torrez's argument that the mat is defective rests solely on her assertion that the floor was also wet. However, as we have just noted, Ms. Torrez failed to prove that SBPH had notice of the wet floor or that it had a reasonable opportunity to remedy the wet floor. Thus, for reasons similar to the ones stated above, the mat's placement is immaterial because Ms. Torrez failed to satisfy all elements establishing liability under La. R.S. 9:2800.

**DECREE**

In light of the foregoing, the June 25, 2024 district court judgment is reversed and Ms. Torrez's claims against St. Bernard Parish Hospital Foundation, Inc., Louisiana Medical Mutual Insurance Company and Ochsner Clinic Foundation d/b/a Ochsner Health System, are hereby dismissed with prejudice.

**REVERSED AND DISMISSED**