| | | | |
|---|---|---|---|
| **CAITLIN SCOTT** | * | **NO. 2025-CA-0513** |
| **VERSUS** | * | **COURT OF APPEAL** |
| **CITY OF NEW ORLEANS BY AND THROUGH THE NEW ORLEANS AVIATION BOARD D/B/A LOUIS ARMSTRONG NEW ORLEANS INTERNATIONAL AIRPORT** | * | **FOURTH CIRCUIT** |
| | * | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2024-00745, DIVISION "F-14"
Honorable Jennifer M Medley
\* \* \* \* \* \*
**Judge Paula A. Brown**
\* \* \* \* \* \*

(Court composed of Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins, Judge Paula A. Brown)


Bobby G. Hawkins
Anthony D. Irpino
IRPINO, AVIN & HAWKINS
2216 Magazine Street
New Orleans, LA 70130


      COUNSEL FOR PLAINTIFF/APPELLANT


Mindy Brickman
Oscar McDuffie Gwin
CHRISTOVICH & KEARNEY, LLP
601 Poydras Street
Suite 2300
New Orleans, LA 70130


      COUNSEL FOR DEFENDANT/APPELLEE


                          **REVERSED;**
        **REMANDED WITH INSTRUCTIONS**

                          **FEBRUARY 18, 2026**

This case involves the issue of premises liability for a public entity. Appellant, Caitlin Scott ("Ms. Scott"), appeals the district court's May 28, 2025 judgment, which granted summary judgment in favor of Appellees, the City of New Orleans by and through the New Orleans Aviation Board ("NOAB")[1] and ACE Property and Casualty Insurance Company ("ACE") (collectively, "Defendants"), dismissing all of Ms. Scott's claims with prejudice. For the reasons that follow, we reverse the district court's May 28, 2025 judgment, and remand the matter for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

On February 25, 2023, Ms. Scott was traversing Concourse C at Louis Armstrong New Orleans International Airport (the "Airport") located in Kenner, Louisiana, to catch an outbound flight. At some point along her path, Ms. Scott encountered a slick portion of the walkway, whereupon she slipped and fell. Surveillance video from that day reveals that approximately nine minutes prior to Ms. Scott's fall, another Airport patron spilled some sort of clear liquid from a cup.

---

[1] NOAB is an unattached municipal board of the City of New Orleans and is charged with the administration, operation, and maintenance of Louis Armstrong International Airport. *See* La. R.S. 2:131 *et seq.* *See also* La. R.S. 2:351.

1

The patron's companion then walked to a nearby coffee-shop counter where she briefly interacted with the shop's employee and appeared to retrieve a new cup and pour the remaining liquid from the original cup into the replacement cup. Shortly afterwards, the two left the scene without cleaning up any liquid that might have remained on the floor. According to a sworn affidavit signed by Michelle Wilcut ("Ms. Wilcut")—Deputy Director and Chief Customer Service Manager of the Airport on the day of the incident—Ms. Scott's fall was reported to NOAB via the Airport's AVCOM[2] communication system. Ms. Wilcut further attested that within the nine minutes between the spill and Ms. Scott's fall, the spill was not reported to NOAB.

On January 26, 2024, Ms. Scott filed a *Petition for Damages*, naming as defendants NOAB and its liability insurer, ACE Property and Casualty Company. In the petition, she alleged that she sustained injuries from her fall caused by a hazardous and dangerous substance and that NOAB had been negligent by failing to properly maintain the Airport by keeping it free from such defects and by failing to warn her of the dangerous condition. Following, on April 17, 2024, Defendants filed an answer, generally denying Ms. Scott's allegations and any liability on their part. A little over six months later, on November 4, 2024, Defendants jointly filed a motion for summary judgment. In this motion, Defendants argued that Ms. Scott would be unable to meet her burden of proof at trial that NOAB had either actual or constructive notice of the hazardous condition, as required for a finding of liability on the part of a public entity, pursuant to La. R.S. 9:2800.[3] In response, on

---

[2] AVCOM is the department established by the Aviation Board that has responsibility for Airport communications, emergency dispatch, and other related functions.

[3] Louisiana Revised Statutes 9:2800 will be more fully discussed *infra*.

February 14, 2025, Ms. Scott retained Neil Hall, PhD ("Mr. Hall"), a licensed professional engineer, architect, landscape architect and interior designer, to inspect the walkway where she fell and to provide an expert report of his findings. Mr. Hall delivered this report to Ms. Scott on April 10, 2025.

On April 25, 2025, Ms. Scott filed an *Expedited Motion to Continue Hearing on Defendant's Motion for Summary Judgment Due to Insufficient Discovery*. She argued in her memorandum in support of the motion that La. C.C.P. art. 966(A)(3) mandates that summary judgment may only be granted "[a]fter an opportunity for adequate discovery," and that pursuant to La. C.C.P. art. 966(C)(2), "[f]or good cause shown, the court may order a continuance of the hearing." The district court denied the expedited motion on April 28, 2025, with a notation that the matter needed to be set for contradictory hearing. The record on appeal does not contain a request or motion to set such a hearing. Nevertheless, Ms. Scott filed an opposition to the motion for summary judgment on April 30, 2025, in which she re-urged the argument that there had been inadequate time for discovery and attached the sworn affidavit and expert report of Mr. Hall. On May 12, 2025, Defendants filed a reply brief, wherein it was explained that Ms. Scott had already been the beneficiary of two unopposed motions for continuance. The record confirms that the original hearing on the motion for summary judgment was set for December 19, 2024. That hearing was continued until February 6, 2025, which hearing was also continued until it was finally heard on May 15, 2025. Ruling from the bench, the district court granted NOAB's motion for summary judgment, finding that Ms. Scott's opposition contained nothing but conclusory

3

allegations, there had been ample time for discovery and Ms. Scott had not previously raised any discovery issues to that court. A written judgment dismissing all of Ms. Scott's claims against Defendants with prejudice was signed on May 28, 2025, and mailed on June 5, 2025. This timely appeal followed.

**DISCUSSION**

Ms. Scott has assigned four alleged errors for our review,[4] which we have summarized and narrowed to two principal issues: (1) the district court erred when it granted summary judgment in favor of NOAB, finding that no genuine issues of material fact remained; and (2) the district court erred when it denied Ms. Scott's motion to continue to conduct additional discovery.

*Summary Judgment*

"It is well-settled law that '[t]his Court reviews the granting of '[a] summary judgment on appeal *de novo*, using the same criteria that govern the [district] court's determination of whether summary judgment is appropriate.'" *Cloud v. Gibson*, 23-0435, p. 10 (La. App. 4 Cir. 7/30/24), 399 So.3d 604, 611 (quoting

---

[4] Specifically, Ms. Scott asserts that:

1. It was error for the [district] court to deny Plaintiffs motion to continue and instead rule on Defendants' motion for summary judgment, when Plaintiff was not permitted to depose Defendants' corporate representative, nor was she permitted to depose Defendants' employee/s tasked with monitoring live CCTV footage, and the employee who responded and cleaned up the spill.

2. It was error for the [district] court to make credibility determinations regarding Mr. Hall's expert conclusions, because "the district court is 'statutorily obligated to consider the expert's opinions' introduced in support of a summary judgment motion."

3. It was error for the [district] court to grant Defendant's motion for summary judgment because evidence shows that there is a disputed issue of material fact regarding whether Defendants had actual notice of the defect because Defendants created the defect.

4. It was error for the [district] court to grant Defendant's motion for summary judgment because evidence shows that there is a disputed issue of material fact regarding whether Defendants had constructive notice of the defect because Defendants monitored CCTV footage in real time.

4

*Breston v. DH Catering, LLC*, 23-0460, p. 12 (La. App. 4 Cir. 2/5/24), 384 So.3d 953, 961). "Generally, on a motion for summary judgment, the burden of proof remains with the mover." *Id.* (citation omitted). "But, if the moving party will not bear the burden of proof on the issue at trial and identifies an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to counter that assertion and establish that he will be able to satisfy his evidentiary burden of proof at trial." *Id.* at pp. 10-11, 399 So.3d at 611 (citation omitted). "However, if the opponent of the motion cannot do so, there is no genuine issue of material fact and summary judgment will be granted." *Id.* at p. 11, 399 So.3d at 611 (citation omitted).

"The . . . adverse party [must] produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1). "The supporting and opposing affidavits of experts may set forth such experts' opinions on the facts as would be admissible in evidence under Louisiana Code of Evidence Article 702,[5] and shall show affirmatively that the affiant is competent to testify to the matters stated therein." La. C.C.P. art. 967(A). "[A]n adverse party may not rest on the

---

[5] Louisiana Code of Evidence Article 702 instructs, in pertinent part:

> A. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (2) The testimony is based on sufficient facts or data;
>
> (3) The testimony is the product of reliable principles and methods; and
>
> (4) The expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial." La. C.C.P. art. 967(B). "In consider[ing] a motion for summary judgment, the trial court cannot make credibility determinations but must construe reasonable factual inferences in favor of the party opposing the motion, resolving all doubt in favor of the opponent." *Mendoza v. ACE Prop. & Cas. Ins. Co.*, 24-0604, p.11 (La. App. 4 Cir. 5/27/25), 414 So.3d 1172, 1181 (quoting *Anderson v. Briggs*, 23-0814, 24-0808, p. 13 (La. App. 4 Cir. 4/25/25), 414 So.3d 990, 1001).

"A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could only reach one conclusion, there is no need for trial on that issue, and summary judgment is appropriate." *Aguiluz v. Mid-Century Ins. Co.*, 24-0759, p. 3 (La. App. 4 Cir. 4/14/25), 414 So.3d 939, 942 (quoting *Reddick v. State*, 21-0197, p. 6 (La. App. 4 Cir. 9/29/21), 328 So.3d 504, 508). "A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Id.* at pp. 3-4, 414 So.3d at p. 942. "Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is 'material' for summary judgment purposes can be seen only in light of the substantive law applicable to the case." *Id.* at p. 4, 414 So.3d at 942 (quoting *Jackson v. City of New Orleans*, 12-2742, p. 6 (La. 1/28/14), 144 So.3d 876, 882).

Louisiana Revised Statutes 9:2800, entitled 'Limitation of liability for public bodies,' is the substantive law applicable to the case *sub judice*. It provides, in pertinent part:

> A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
>
> * * *
>
> C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
>
> D. Constructive notice shall mean the existence of facts which infer actual knowledge.
>
> * * *
>
> G. (1) "Public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.

"In interpreting La. R.S. 9:2800, this Court has outlined the elements a plaintiff must prove in order to prevail in a claim against a public entity, namely '1) the public entity's custody or ownership of the defective thing; 2) the defect created an unreasonable risk of harm; 3) the public entity's actual or constructive notice of the defect and failure to take corrective action within reasonable time; and 4) causation.'" *Mendoza*, 24-0604 at p. 13, 414 So.3d at 1182 (quoting *Amedee v. Aimbridge Hosp.*, LLC, 20-0590, p. 5 (La. App. 4 Cir. 12/16/22), 354 So.3d 250, 253). "A plaintiff's 'failure on any one' element 'is fatal to the case.'" *Id.* (citation omitted). "As this Court has further explained, the liability elements a plaintiff must prove in a suit against a public entity 'under La. R.S. 9:2800 are

7

essentially the same as' the elements of proof required under La. C.C. arts. 2317 and 2317.1." *Id.* (quoting *George v. ABC Ins. Co.*, 22-0148, p. 7 (La. App. 4 Cir. 10/26/22), 351 So.3d 447, 453).

In their pleadings and in their brief to this Court, Defendants take issue only with the third element we just outlined—i.e., that NOAB did not have actual or constructive notice of the spilled liquid. This Court's jurisprudence has explained that "actual notice is given under La. R.S. 9:2800 by 'reporting the defect to a governmental employee who has a duty either to keep the property involved in good repair or to report dangerous conditions to the proper authorities.'" *Sewell v. Sewerage and Water Bd. of New Orleans*, 18-0996, p. 11 (La. App. 4 Cir. 5/29/19), 363 So.3d 474, 486 (quoting *Hanson v. Benelli*, 97-1467, p. 15 (La. App. 4 Cir. 9/30/98), 719 So.2d 627, 636). Further, a finding of constructive notice, as contemplated in La. R.S. 9:2800(D), "is appropriate if a court finds that 'the conditions which caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury.'" *Bridges v. FCS Ent.*, 00-1041, p. 3 (La. App. 4 Cir. 5/23/01), 789 So.2d 691, 693. (quoting *Maldonado v. La. Superdome Comm'n*, 95-2490, pp. 6-7 (La. App. 4 Cir. 1/22/97), 687 So.2d 1087, 1092).

Defendants argue that Ms. Scott has failed to put forth adequate evidence that any governmental employee was informed of the spill before her fall; therefore, NOAB did not have actual notice. Defendants then rely on prior jurisprudence to assert that the nine minutes that elapsed between the time the liquid was spilled and Ms. Scott's fall were insufficient to establish constructive notice. Ms. Scott counters that her expert's opinion established that the Airport

8

flooring throughout the concourse, including the location where Ms. Scott fell, was defective. According to Ms. Scott, this was a genuine issue of material fact that should have precluded the granting of summary judgment by the district court. We agree.

In *Nolaluna, LLC v. Crosby*, this Court discussed the interplay between expert reports and the summary judgment procedure. 24-0555 (La. App. 4 Cir. 5/6/25), 421 So.3d 125. There we explained that "[u]nder La. C.C.P. art. 966(D)(2), "[t]he court shall consider only those documents filed or referenced in support of or in opposition to the motion for summary judgment but shall not consider any document that is excluded pursuant to a timely filed objection." *Id.* at p. 11, 421 So.3d at 132. We then described two methods by which an expert report might be excluded from consideration by the district court:

> (1) An 'objection to a document shall be raised in a timely filed opposition or reply memorandum.' The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing whether the court sustains or overrules the objections raised. La. C.C.P. art. 966(D)(2).

> (2) An 'objection ... to an expert's qualifications or methodologies in support of or in opposition to a motion for summary judgment' is brought under La. C.C.P. art. 1425(F)[6] and 'shall be filed, heard, and decided prior to the hearing on the motion for summary judgment.' La. C.C.P. art. 966(D)(3).

Neither of those scenarios occurred in this case. Ms. Scott attached a copy of Mr. Hall's affidavit and report to her opposition to NOAB's motion for summary judgment. In its *Reply Memorandum in Support of Motion for Summary Judgment on Lack of Notice*, NOAB argued that Mr. Hall's opinions articulated in the

---

[6] Louisiana Code of Civil Procedure article 1425(F) outlines the methodology for what is commonly referred to as a *Daubert* motion. "A *Daubert* motion uses 'the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and adopted by our Louisiana Supreme Court in *State v. Foret*, 628 So.2d 1116, 1122 (La. 1993),' and enlists the district court to 'perform a 'gatekeeping' function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Nolaluna*,

affidavit and accompanying report were irrelevant and unnecessary for the district court to rule on the motion for summary judgment, but did not object to its inclusion. Furthermore, no objection was lodged at the May 15, 2025 hearing when Ms. Scott's counsel sought to offer, file and introduce her opposition to the motion for summary judgment including all of the attachments. Review of the record indicates NOAB also did not object to Mr. Hall's qualifications or his methodologies used to formulate his opinions by filing a *Daubert* motion.

"In the absence of an objection raised in a timely opposition or reply memorandum, the district court is 'statutorily obligated to consider the expert's opinions' introduced in support of a summary judgment motion." *Nolaluna*, 24-0555, p. 12, 421 So.3d at 132 (quoting *Sketchler v. Hernandez*, 20-0292, p. 8 (La. App. 1 Cir. 5/19/21), 326 So.3d 912, 918; *see also* La. C.C.P. art. 966(D)(2). "At that point, in determining whether the evidence creates a genuine issue of material fact, the [district] court cannot make credibility determinations, evaluate testimony, or otherwise weigh the evidence." *Id.* at p. 12, 421 So.3d at 132-33. "Moreover, numerous courts have frowned upon excluding an expert at the summary judgment stage, which would 'improperly usurp the function of the factfinder at trial, which is to weigh the evidence and expert opinions in order to determine whether the plaintiffs have met their burden' of proving the elements of their claims." *Id.* at p. 17, 421 So.3d at 135 (first quoting *Carpenter v. Thomas*, 22-0872, p. 13 (La. App. 1 Cir. 3/13/23), 362 So.3d 977, 985; then citing *Aldridge v. Greenbrier Hosp.*, L.L.C., 23-0526, p. 16 (La. App. 1 Cir. 3/13/24), 385 So.3d 712, 725, *writ denied*, 24-00480 (La. 9/17/24), 392 So.3d 633, *and writ denied*, 24-00484 (La. 9/17/24), 392 So.3d 634, *and writ denied*, 24-00492 (La. 9/17/24), 392 So.3d 635; *McKay v. Hosp. Serv. Dist. No. 1 of Tangipahoa Parish*, 23-1244, p. 11 (La. App. 1 Cir.

10/11/24), 405 So.3d 869, 877-78; *Crawford v. Ordoyne*, 24-0716, p. 12 (La. App. 1 Cir. 3/20/25), 410 So.3d 998, 1007).

In the case *sub judice*, Mr. Hall meticulously described the methods he used to test the floor of the walkway at the Airport. He opined that, when measured against the standards provided for pursuant to the 2015 Louisiana Uniform Construction Code (2015 International Building Code, Sec. 2003.4) and the City of Kenner's Municipal Code, the terrazzo-style flooring installed in the Airport walkway was defective. Mr. Hall—who holds a certification in the field of tribometry, the science dealing with friction, wear, and lubrication—explained that he had tested the static coefficient of friction of the walkway where Ms. Scott fell. His testing indicated that, when dry, the flooring met the standards mandated in the 2015 Louisiana Uniform Construction Code; however, when wet the static coefficient of friction of the flooring fell below those standards. Since NOAB would be presumed to know of the applicable construction codes and the standards set forth therein, it would or should have known that the alleged defective flooring could facilitate a hazardous condition when it was wet. We find that this creates a genuine issue of material fact. Our review of the hearing transcript reveals that the district court failed to consider that the flooring itself might be defective as opined by Mr. Hall. Furthermore, the district court weighed the credibility of Mr. Hall's opinions and reasoned that "the only defense I have heard to the motion for summary judgment are conclusory allegations." We find this to be error. With no objection or competing expert affidavit or report, the district court was obligated to consider Mr. Hall's expert opinion without weighing his credibility. This assignment of error has merit.

*Additional Discovery*

"Ordinarily, a motion for summary judgment may be granted only '[a]fter an opportunity for adequate discovery . . . .'" *Succession of Hickman*, 22-0730, p. 7 (La. App. 4 Cir. 3/15/23), 359 So.3d 584, 590 (quoting *Francois v. Ports Am. Louisiana, L.L.C.*, 20-0440, pp. 3-4 (La. App. 4 Cir. 3/10/21), 314 So.3d 894, 897); *see also* La. C.C.P. art. 966(A)(3).[7] "When discovery is alleged to be incomplete, a trial court has the discretion either to hear the summary judgment motion or to grant a continuance to allow further discovery." *Id.* (quoting *Roadrunner Transp. Sys. v. Brown*, 17-0040, p. 11 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1272). "In this procedural context, a trial court's choice to hear a motion for summary judgment or to grant a continuance is reviewed under an abuse of discretion standard." *Id.*, (quoting *Roadrunner*, 17-0040, p. 11, 219 So.3d at 1272-73). "Although the language of [Louisiana Code of Civil Procedure] article 966 does not grant a party the absolute right to delay a decision on a motion for summary judgment until all discovery is complete, the law does require that the parties be given a fair opportunity to present their case." *Id.* at p. 8, 359 So.3d at 591 (quoting *Francois*, 20-0440, p. 5, 314 So.3d at 897) (alteration in original). "Unless [a] plaintiff shows a probable injustice[,] a suit should not be delayed pending discovery when it appears at an early stage that there is no genuine issue of fact." *Id.*

This Court has consistently utilized a four-part test to analyze a plaintiff's contention that there has been insufficient time to conduct adequate discovery:

---

[7] Louisiana Code of Civil Procedure article 966(A)(3) in full provides:

> After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.

(i) Whether the party was ready to go to trial,

(ii) whether the party indicated what additional discovery was needed,

(iii) whether the party took any steps to conduct additional discovery during the period between the filing of the motion and the hearing on it, and

(iv) whether the discovery issue was raised in the [district] court before the entry of the summary judgment.

*Id.* (quoting *Roadrunner*, 17-0040, pp. 11-12, 219 So.3d at 1273); *see also Schultz v. Cox Operating, LLC*, 17-0165, p. 8 (La. App. 4 Cir. 1/31/18), 317 So.3d 336, 341; *Bass P'ship v. Fortmayer*, 04-1438, p. 10 (La. App. 4 Cir. 3/9/05), 899 So.2d 68, 75; *Greenhouse v. C.F. Kenner Associates Ltd. P'ship*, 98-0496, p. 3 (La. App. 4 Cir. 11/10/98), 723 So.2d 1004, 1006).

Considering the four factors, first, Ms. Scott avers that she was not ready to go to trial because she still sought to schedule certain depositions. It does not appear from the record that a trial date had been set, making it likely that NOAB was also not prepared to go to trial. Next, in the motion to continue, counsel for Ms. Smith indicated what outstanding discovery she found necessary—namely, taking depositions, including that of the employee who was tasked with monitoring the surveillance video for the Airport. As to the third factor, it is unclear from the record when written discovery was propounded by Ms. Scott or responded to by NOAB.[8] However, during the period between the filing of the motion for summary judgment on November 4, 2024, and the hearing on May 15, 2025, it is undisputed that Ms. Scott engaged Mr. Hall to inspect the walkway where she fell and to provide an expert report of his findings. Mr. Hall delivered this report to

---

[8] NOAB attached only Ms. Scott's answers to interrogatories and responses to requests for production of documents to its motion for summary judgment. Those discovery responses were dated June 10, 2024.

Ms. Scott on April 10, 2025. Finally, as we have noted, on April 25, 2025, Ms. Scott filed a motion to continue based on her desire to conduct additional discovery and also raised the issue in her opposition to NOAB's motion for summary judgment.

Taken together, we find these factors weigh heavily in favor of allowing Ms. Scott additional time to conduct discovery. This assignment of error has merit.

## DECREE

For the foregoing reasons, we reverse the district court's May 28, 2025 judgment, and remand the matter for further proceedings consistent with this opinion.

**REVERSED;
REMANDED WITH INSTRUCTIONS**